UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                          Chapter 11

FMTB BH LLC,                                                    Case No. 18-42228

                                    Debtor.
-------------------------------------------------------------x
FMTB BH LLC,                                                    Adv. Pro. No. 18-01052

                                    Plaintiff,

        against

1988 MORRIS AVENUE LLC, 1974 MORRIS
AVENUE LLC, 700 BECK STREET LLC, 1143
 FOREST AVENUE LLC, and 1821 TOPPING
AVENUE LLC,

                                    Defendants.
-------------------------------------------------------------x

## COMPLAINT

        Plaintiff, FMTB BH LLC ("FMTB BH" or the "Purchaser"), by its attorneys,

Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for its Complaint against Defendants,

1988 MORRIS AVENUE LLC, 1974 MORRIS AVENUE LLC, 700 BECK STREET LLC, 1143

FOREST AVENUE LLC, and 1821 TOPPING AVENUE LLC (collectively, "Sellers"), alleges as

follows:

## SUMMARY OF THE ACTION

        1.      This action arises out of a scheme by the Sellers to renege on contracts to

sell to Plaintiff FMTB BH five separate properties located in the Bronx, New York, described further

below, and to seize the contract deposits paid by Plaintiff, under the false pretense that Plaintiff was

not willing to close.  Plaintiff entered into a separate contract of sale with each of the defendant limited

liability companies, which each owned one of the five properties. All five contracts were entered into

on June 19, 2017, and later modified by written addendums dated October 4, 2017 (collectively, the "Agreements"). Through newly retained counsel, the Sellers purported to demand that the Plaintiff proceed to closing on the December 18, 2017 "time of the essence" closing date (the "purported TOE date") provided for in the Addendums. In actuality, the Sellers were not willing, ready and able to close on the TOE date. The Sellers were unable to deliver insurable title to the Plaintiff on the purported TOE date as required under the Agreements as they had failed to clear various title defects and building violations on each of the properties and failed to grant Plaintiff reasonable access to one of the properties to inspect post-contract date damage that had occurred. Plaintiff's attorney so advised the Sellers prior to the purported TOE date and rejected the closing date, but the Sellers nevertheless proceeded without the Plaintiff, and without the Plaintiff's title insurance company, with a sham closing on that date.

2.       When Plaintiff refused to succumb to the Sellers' frivolous demand that Plaintiff proceed to closing on December 18, 2017, the Sellers wrongfully and improperly purported to terminate the Agreements and to seize Plaintiff's contract deposits, in violation of the Agreements. Nevertheless, through their respective attorneys, the parties continued thereafter to negotiate the title defects and other impediments to closing. Plaintiff was and is ready, willing and able to close, but the Sellers have refused to close pursuant to the Agreements, claiming in bad faith that their prior baseless termination of the Agreements entitles them to renegotiate the purchase prices for the Properties.

3.       As set forth in detail below, the Defendants' seller's remorse does not justify their breaches of the Agreements nor their deliberate and intentional scheme to impede Plaintiff from obtaining the benefits of the Agreements and acquire the Properties. But for the defendants' breaches, Plaintiff would have been ready, willing and able to close on the TOE date and thereafter as there was absolutely no legitimate basis for the defendants to refuse to do so.

As a result, Plaintiff is entitled to a judgment requiring each of the Sellers to specifically perform all of their obligations under the Agreements, or in the alternative, for damages in amounts to be determined, including for the amount of the Plaintiff's contract deposits plus interest, and the amounts advanced by Plaintiff to repair the Properties, and additional damages.

## THE PARTIES

4.      Plaintiff FMTB BH is a New York limited liability company having an address of 1335 50th Street, Suite 3G, Brooklyn, New York.

5.      Upon information and belief, defendant 1988 Morris Avenue LLC is a New York Limited liability company having an address at 1988 Morris Ave., Bronx, NY, and which is the owner of said property.

6.      Upon information and belief, defendant 1974 Morris Avenue LLC is a New York Limited liability company having an address at 1974 Morris Ave., Bronx, NY, and which is the owner of said property.

7.      Upon information and belief, defendant 700 Beck Street LLC is a New York limited liability company having an address at 770 Beck St., Bronx, NY, and which is the owner of said property.

8.      Upon information and belief, defendant 1143 Forest Avenue LLC is a New York Limited liability company having an address at 1143 Forest Ave., Bronx, NY, and which is the owner of said property.

9.      Upon information and belief, defendant 1821 Topping Avenue LLC is a New York limited liability company having an address at 1821 Topping Ave., Bronx, NY, and which is the owner of said property.

10.      Upon information and belief, each of the defendants are under the common control of the same investor group.

## JURISDICTION AND VENUE

11.     The Debtor brings this adversary proceeding pursuant to Sections 105, 365, 542 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12.     The Bankruptcy Court has constitutional authority to enter a final judgment in this adversary proceeding as a "core" proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (E), (M), (N), and (O) in that the complaint affects the administration of the bankruptcy estate and involves a determination of the Debtor's property rights within the meaning of §541.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## FACTS COMMON TO ALL CAUSES OF ACTION

14.     Plaintiff entered into separate contracts of sale dated as of June 19, 2017 with each of the defendant limited liability companies for the purchase of their respective properties located at 1988 Morris Ave., 1974 Morris Ave., 770 Beck St., 1143 Forest Ave., and 1821 Topping Ave., Bronx, NY (collectively, the "Properties"). Each of the contracts is identical (except as to the purchase price and down payment required) and based on the standard form "Residential Contract of Sale" promulgated by the Real Property Section of the New York State Bar Association and other bar associations in New York, version 11/00. In addition, each contract contains an identical Seller's Rider to Contract.

15.     The purchase price for each of 1988 Morris Ave. and 1974 Morris Ave. is $516,666.67, with a required down payment of $25,833.33 each. The purchase price for each of 1821 Topping Ave., 770 Beck St. and 1143 Forest Ave. is $688,888.89, with a required down payment of $34,444.44 each. Upon information and belief, the required down payments were paid coincident with the execution of the contracts on or about June 19, 2017. The contracts

provide for the down payment to be held by the Sellers' attorney in a segregated bank account at Bank of America.  At the time the down payments were made, the Sellers' attorney was Malik Pearson, Esq. of the Pearson Law Office, PLLC in New York, NY.

16.    Among other provisions, the Agreements provide that the sale of the properties is not subject to any existing mortgage, and there is no mortgage commitment contingency.  The Agreements require, in paragraph 13 thereof, the Sellers to give the Purchaser such title as a reputable title insurance or abstract company of Purchaser's choice licensed to do business in the State of New York shall be willing to approve and insure in accordance with its standard form of title policy, subject only to the matters provided for in the Agreements.  The permitted exceptions to title in the Agreements are limited and set forth in paragraph 9 of each contract and paragraphs 2 and 7 of the Rider to each contract.  Paragraph 5 of the Rider also describes the required condition of each property, essentially stating that the Purchaser is aware of the physical condition and state of repair of the premises and shall accept the same as is in their present condition and state of repair, subject to reasonable use, wear and tear and natural deterioration between the contract date and the date of closing, except that the appliances, plumbing, heating, and electrical systems shall be in working order and the roof should be free of leaks at closing.

17.    The contracts originally provided, in paragraph 14 thereof, that closing shall take place at the Sellers' attorneys' offices on or about 60 days from the purchaser's receipt of a fully executed contract and did not make time of the essence.

18.    The contracts were each amended pursuant to an executed Addendum to Contract made and entered into by Plaintiff and the respective defendants as of October 4, 2017. Among other things, each Addendum permitted the immediate release of the down payments held by Sellers in the amounts described above and required the Purchaser to wire to the Seller

additional down payments in the amount of $169,000 for each of the five properties on or before

October 19, 2017, which the Purchaser did.  In addition, the Purchaser was required to and did

pay the monthly mortgage interest on 1998 Morris Ave. in the amount of $2,957.50 and on 1821

Topping Ave. in the amount of $3,920 from the execution of the Addendum to the closing date

for each property.

19.    In addition, each Addendum provides that the "Seller and Purchaser agree

to set a Time is of the Essence closing date of December 18, 2017 ("TOE Closing Date")."

20.    Following the execution of the contracts and the Addendum to each

contract, Purchaser's attorney ordered an examination of title in respect of the properties as is

customary and as is provided in the contracts in paragraph 21 thereof.  On or about November 14,

2017, Purchaser's attorney delivered to Sellers' counsel by email a list of title objections or

violations as appeared on the title examination, including in the email a list of the documents or

information needed in order to obtain insurable title with respect to each property, in accordance

with paragraph 7 of the Riders.

21.    There were numerous items on the title exceptions report for each of the

properties that needed to be addressed by the Sellers in order for the Sellers to be able to deliver

insurable title in accordance with the contracts of sale, including without limitation, open

mortgages, New York City Environmental Control Board (ECB) monetary judgments, UCC

filings, sidewalk violations, landmark violations, missing deeds and a notice of pendency.

22.    In addition to the need to resolve the title issues, before a closing could

occur the Sellers were required to address a question that arose as to the status of a purported

lease for the first floor of at one of the properties, 770 Beck St., which was not sufficiently

resolved to the satisfaction of the Purchaser.

23.     Another of the properties, 1988 Morris Ave., was discovered to have water and electrical damage, mold, and roofing issues sustained after the date the contracts of sale were entered into.   In an effort to remediate the situation, the Seller permitted the Purchaser to undertake repairs pre-closing, the costs of which the Purchaser advanced in the amount of at least $30,000, and which required inspection before closing.

24.     On or about December 6, 2017, before such time as the Sellers had resolved (i) the title exceptions for each of the properties or provided the relevant documents requested by the title company, (ii) the lease issue at 770 Beck St., or (iii) the Purchaser's request to inspect the damage at 1988 Morris Ave., the Sellers changed their attorneys to Brian Hsu, Esq. of the firm Goldstein Hall, New York NY.   Upon introducing himself, Mr. Hsu began pressing to close the transactions by the stated TOE date of December 18, 2017, without regard to addressing the substantial impediments to closing which were the Sellers' obligations to resolve before the Sellers could be ready, willing and able to close.

25.     Mr. Hsu sent a letter by email and certified mail dated December 5, 2017 on behalf of each of the Sellers to the Purchaser's counsel, purporting to confirm the TOE Closing Date of December 18, 2017 in each contract Addendum.   The attorney for the Purchaser, Abraham Weisel, immediately began discussing with Mr. Hsu the various open issues which needed to be resolved before the closing could occur, including, among other things, the Purchasers' requirement that it be allowed to inspect the 1988 Morris Avenue property that had been damaged, as was the Purchaser's right pursuant to paragraph 12 of the contract, and the open issues concerning the veracity of the alleged lease at the 770 Beck Street property.

26.     As of December 11, 2017, Mr. Hsu advised the attorney for the Purchaser that he had still not obtained the Seller's permission to access to the 1988 Morris Ave. property

for inspection.  The attorneys for the Sellers and the Purchaser continued to exchange numerous emails about the various open issues required to be resolved before the closing of the sales could occur in accordance with the Agreements.  Furthermore, the Purchaser's title insurance company, Riverside Abstract, which would be required to attend any closing and to issue an insurance policy insuring title as a condition of closing, was not then in a position to do so given the Sellers' failures to satisfy the various exceptions to title that had previously been identified and delivered to Sellers' counsel.

27.    Purchaser's attorney sent three letters dated December 15, 2017 to the Sellers' attorney rejecting the attorney's Sellers' purported TOE letter of December 11, 2017 and his attempt to schedule the closing for each of the properties.  The Purchaser's attorney's letters identified the following issues requiring resolution before closing could occur:

(i)    for 1974 Morris Ave., 1821 Topping Ave., and 1143 Forest Ave., Riverside Abstract, the title company, had advised that no one from Seller's attorney's offices had been in contact with them regarding clearing title, 1821 Topping Avenue has a *lis pendens* filed against the property not yet cleared, and the title company has not confirmed that the Sellers were ready, willing and able to deliver clear title at closing;

(ii)    for 1998 Morris Ave., Riverside Abstract, the title company, had advised that no one from Seller's attorney's offices had been in contact with them regarding clearing title, the title company had not confirmed that the Sellers were ready willing and able to deliver clear title at closing, and the post-contracting damage to the premises discovered by the Purchaser, including substantial structural damage, had not been addressed by the Seller; and

(iii)    for 770 Beck St., Riverside Abstract, the title company, had advised that no one from Seller's attorney's offices had been in contact with them regarding clearing title, the title company had not confirmed that the Sellers were ready willing and able to deliver clear title at closing, and a lease presented to Purchaser for the first floor of the premises was a fraudulent misrepresentation of a material fact.

## **The Sellers Purport to Prematurely Terminate the Agreements In Bad Faith**

28.    As alleged above, Sellers and their attorney had full knowledge that there were substantial issues precluding the ability of the Sellers to close on December 18, 2017. Nevertheless, Sellers refused to postpone the TOE sale date.  On December 19, 2017 Sellers' attorney sent a letter to Purchaser's attorney on behalf of each of the five Sellers purporting to respond to Purchaser's attorney's December 15 letters, denying that Sellers were not ready, willing and able to close on the transaction and deliver clear title at closing, and unilaterally declaring that Purchaser was in default of the Agreements. The letter further advised that Sellers were retaining the down payments and additional down payments provided pursuant to the Addendum, as liquidated damages.

29.    Upon information and belief, the title company, Riverside Abstract, was not present at the purported closing on December 18, 2017 and the exceptions to title previously identified had not been resolved as of that date.

30.    After they sent the December 19 letter, the Sellers, through their attorney, continued to communicate with both Riverside Abstract and the attorneys for the Purchaser, in a continuing effort to clear the title exceptions and to close the sale of the Properties, demonstrating that their purported termination of the Agreements was in bad faith and ineffective.

31.    The ongoing discussions about the open issues, including the exceptions to

title, continued through at least the middle of March 2018.  Unfortunately, without any basis for doing so, the Sellers attempted to extract a substantial increase in the sale prices set forth in the Agreements.  The Sellers thereafter refused to close on the Agreements without any lawful basis for doing so and have retained the Purchaser's down payments unlawfully.

32.    Upon information and belief, the Sellers began re-marketing the Properties with a higher purchase price and are brazenly continuing to do so while refusing to close with the Purchaser.

## FIRST CAUSE OF ACTION
### (Breach of Contract/Specific Performance)

33.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

34.    Plaintiff and the Sellers are parties to the Agreements, which are valid and enforceable contracts.

35.    As of December 18, 2017, the TOE date set forth in each Addendum, the Sellers were not ready, willing and able to proceed to closing of the sale of the respective properties for the reasons detailed above, which resulted in the Seller's inability to convey title to Plaintiff in accordance with the respective Agreements.

36.    The Seller's wrongful actions, detailed above, constitute a material breach of the Agreements.

37.    But for each Seller's breach of their obligations under the Agreement, Plaintiff would have been ready, willing and able to close on the sale as anticipated by each Agreement.

38.    By reason of the foregoing, Plaintiff is entitled to a judgment, pursuant to applicable law and section 23(b) of the Agreements, declaring and adjudging that each of the Sellers

had no right to terminate the Agreement, which therefore remains in full force and effect, and directing each of the Sellers to specifically perform all of their obligations under their Agreement with Plaintiff, including an abatement of purchase price to take into account the damages suffered by Plaintiff as a result of the Seller's breaches and, where applicable, the Plaintiff's advances required to remedy damage to the Properties and the other pre-closing payments demanded by defendants.

39.    The Agreements relates to an interest in real property that is special, unique and irreplaceable.  The specific performance sought by Plaintiff relates to and affects the title to, or the possession, use or enjoyment of, real property.

40.    Plaintiff has no adequate remedy at law as monetary damages are inadequate. Barring specific performance, Plaintiff cannot be made whole by an award of monetary damages.

41.    Since there is no adequate remedy at law and Plaintiff is entitled to specific performance, Plaintiff has filed a Notice of Pendency in connection with each of the Properties as authorized by New York CPLR §6501 et seq.

## SECOND CAUSE OF ACTION
### (Breach of Contract/Damages)

42.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs.

43.    Plaintiff pleads, in the alternative, that to the extent specific performance with an abatement of the purchase price for each of the Properties as required to make Plaintiff whole is not granted, Plaintiff is entitled to an award of damages by reason of the Defendants' breaches of contract.

44.    The damages incurred by the Plaintiff by reason of each of the

Defendants' breach of contract as described herein includes, but is not limited to, the amount of the contract deposits and additional deposits paid by Plaintiff and unlawfully retained by the Sellers, together with amounts advanced by the Plaintiff for the repair of certain of the Properties, for certain mortgage payments as required by Sellers, for costs incurred for surveys, and attorney's fees, and related costs, and for any additional damages Plaintiff may have suffered by reason of the increase in the value of the properties from the TOE date to the date damages are awarded.

45.    By reason of the foregoing, Plaintiff is entitled to a judgment finding the Sellers in breach of contract and awarding Plaintiff damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Assumption of Agreements)**

46.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs.

47.    Plaintiff also seeks to assume the Agreements pursuant to section 365 of the Bankruptcy Code as the assumption of the Agreements is a valid exercise of the Plaintiff's business judgment and is in the best interest of the Plaintiff and its estate.

48.    By reason of the foregoing, Plaintiff is seeking an order authorizing the Debtor to assume the Agreements.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a.    On Plaintiff's First Cause of Action, for a judgment declaring and adjudging that each of the defendants had no right to terminate their respective Agreement with Plaintiff, which therefore remains in full force and effect, and directing each defendant to specifically perform all of its obligations under their respective Agreement with Plaintiff, with an abatement of purchase price to take into account the damages suffered by Plaintiff as a result

of each defendant's breaches and to the extent applicable, the monies paid by Plaintiff for the repair of the property at issue;

          b.      On Plaintiffs Second Cause of Action, for money damages in an amount to be determined at trial against each of the defendants for their breach of their respective Agreements with Plaintiff, including attorney's fees, survey costs and other expenses incurred;

          c.      On Plaintiff's Third Cause of Action, for an order authorizing the Debtor to assume the Agreements; and

          d.      An award for Plaintiff's costs and disbursements of this action, and such other and further relief as the Court deems just and proper.

New York, New York
April 23, 2018

                        ROBINSON BROG LEINWAND GREENE
                        GENOVESE & GLUCK P.C.

                        By:   /s/ Lawrence S. Hirsh          
                                  Fred B. Ringel
                                  Lawrence S. Hirsh
                                  Clement Yee

                        875 Third Ave, 9th floor
                        New York, New York 10022
                        Tel:  212-603-6300
                        Fax: 212-956-2164
                        *Attorneys for Plaintiff-Debtor*