UNITED STATES BANKRUPTCY COURT
EASTERN DISCTRICT OF NEW YORK
------------------------------------------------------------- X
In re:                                                        :    **Chapter 11**
                                                              :
FMTB BH LLC,                                                  :    Case No. 18-42228 (CEC)
                        Debtor.                               :
-------------------------------------------------------------  :   Adv. Pro. No. 18-01052 (CEC)
FMTB BH LLC,                                                  :
                                                              :
                        Plaintiff,                            :
                                                              :
        -against-                                             :
                                                              :
1988 MORRIS AVENUE LLC, 1974 MORRIS                           :
AVENUE LLC, 700 BECK STREET LLC, 1143                         :
FOREST AVENUE LLC, and 1821 TOPPING                           :
AVENUE LLC                                                    :
                        Defendants.                           :
------------------------------------------------------------- X

**CORRECTED[1] DECLARATION OF IHSAN SALEEM IN SUPPORT OF DEFENDANT'S MOTION FOR AN ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AS MADE APPLICABLE HEREIN BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012(B) DISMISSING PLAINTIFF'S ADVERSARY PROCEEDING ON THE GROUND THAT IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**TO THE HONORABLE CARLA E. CRAIG
UNITED STATES BANKRUPTCY JUDGE:**

       **IHSAN SALEEM,** declares under penalty of perjury that the following is true and correct:

---

[1] Paragraph 13 of this Declaration is corrected to state: "On August 22, 2017, approximately three days…." Instead of "On August 22, 2017, approximately sixty days…."

I am a member of 1988 Morris Ave LLC (incorrectly sued herein as 1988 Morris Avenue LLC), 1974 Morris Ave LLC (incorrectly sued herein as 1974 Morris Avenue LLC), 700 Beck Street LLC, 1143 Forest Ave LLC (incorrectly sued herein as 1143 Forest Avenue LLC) and 1821 Topping Ave LLC (incorrectly sued herein as 1821 Topping Avenue LLC), (collectively, the "Defendants") in the adversarial proceeding herein. I am familiar with all the facts and circumstances herein, except for those stated upon information and belief.

**A.　Introduction**

1.　This Declaration is submitted seeking an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable herein by Federal Rule of Bankruptcy Procedure 7012(b), dismissing this adversary proceeding on the grounds that it fails to state a claim upon which relief may be granted and for such other relief as the Court deems just, proper and equitable.

2.　The Plaintiff filed its Chapter 11 voluntary petition on April 23, 2018 and commenced this adversary proceeding on the same date.

3.　The adversary proceeding stems from five separate contracts to sell five separate properties. The five Defendants are the sellers of each specific property to Plaintiff-Debtor, FMTB BH LLC. As more fully detailed below, although Defendants each served time of the essence letters, Plaintiff failed to close on the properties because it was believed that Plaintiff could not secure proper financing. Thereafter pursuant to the terms of the contracts of sale, Defendants held Plaintiff in default and retained the down payments.

4.　The instant action seeks to argue that Plaintiff-Debtor did not default on the contracts of sale and attempts to seek return of the defaulted down payment. For the reasons set forth below, Plaintiff's adversary proceeding must be dismissed.

5.　The adversary proceeding asserts three causes of action: (i) The first cause of action seeks specific performance for breach of contract, alleging incorrectly that none of the Defendants

were ready, willing and able to close on their respective sale as anticipated by each contract of sale; (ii) The second cause of action seeks, in the alternative, damages for breach of contract, seeking return of the contract deposits, additional deposits, alleged advanced payments made by the Plaintiff and attorneys' fees; and (iii) The third cause of action seeks assumption of the contract agreements pursuant to section 365 of the Bankruptcy Code. A copy of the Complaint is annexed to the Declaration of Brian J. Markowitz ("Markowitz Dec.") as **Exhibit "A"**.

B.  **Statement Of Facts**

6. On or about June 19, 2017, Plaintiff-Debtor entered in to five separate, but similarly worded, contracts of sale[2], with each of the Defendant sellers, wherein the Plaintiff deposited a down payment with the Defendants' previous attorney, as escrow agent, for each of the Contracts. Those Contracts were entered in to by Plaintiff as follows:

   i. From 1988 Morris Avenue LLC[3] as seller, for the purchase of 1988 Morris Avenue, Bronx, NY, with a down payment of $25,833.33;

   ii. From 1974 Morris Avenue LLC as seller, for the purchase of 1974 Morris Avenue, Bronx, NY, with a down payment of $25,833.33;

   iii. From 700 Beck Street LLC as seller, for the purchase of 770 Beck Street, Bronx, NY, with a down payment of $34,444.44;

   iv. From 1143 Forest Avenue LLC as seller, for the purchase of 1143 Forest Avenue, Bronx, NY, with a down payment of $34,444.44; and

   v. From 1821 Topping Avenue LLC as seller, for the purchase of 1821 Topping Avenue, Bronx, NY, with a down payment of $34,444.44[4].

---

[2] Collectively, the Contracts. A copy of each of the Contracts is annexed to the Markowitz Dec. as **Exhibit "B"**.
[3] Although the contracts of sale state that each of the sellers, with the exception of 700 Beck Street LLC, use the word "Avenue", as part of their legal names, each seller actually use the abbreviation "Ave" in their legal names. It is this incorrect spelling of the legal names of each of seller that presumably accounts for the incorrect name of each Defendant in the caption of the action. Upon information and belief, no legal entities using "Avenue" in place of "Ave" exists.
[4] The down payments for all five contracts shall collectively be known as the "Down Payments".

7. Each of the Contracts provided for an all-cash transaction and no mortgage contingency was required.

8. The Contracts called for a closing on or about 60 days from the Plaintiff's attorney receiving a fully executed contract.

9. Each of the Contracts contained a default provision that provided:

> If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

See Markowitz Dec., Exhibit "B" at ¶ 23(a).

10. The Contracts also provided a provision stating:

> Notwithstanding anything herein to the contrary, should the Purchasers not commence an action for the return of the down payment within NINETY (90) DAYS of written notice of default to the purchasers or their attorney, the escrow agent is authorized to deliver the down payment to the sellers…

See Markowitz Dec., Exhibit "B", Rider at ¶ 14.

11. The Contracts further provided that the Defendants were to provide "such title as any reputable title insurance company of purchaser's choosing, licensed to do business in the state of New York shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department…" See Markowitz Dec., Exhibit A at ¶13.

12. The Contracts also contained a clause entitled "Use of Purchase Price to Remove Encumbrances", which provided in relevant part:

> If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances or of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient moneys with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

See Markowitz Dec., Exhibit "A" at ¶20.

13. On August 22, 2017, approximately three days following the expected closing date contemplated in the Contracts, the Defendants' previous attorney sent Plaintiff's attorney five separate time of the essence ("TOE") notices, with respect to each Contract of sale, demanding Plaintiff close on each transaction pursuant to the respective Contracts, with a closing date set for September 14, 2017. However, Plaintiff never responded to the TOE notices and never appeared for the closings. Following Plaintiff's default on the TOE notices and its failure to appear at the TOE closings on September 14, 2017, Defendants' counsel sent a second set of TOE notices to Plaintiff's counsel on September 28, 2017, for each Contract of sale, demanding yet again, that Plaintiff close on each transaction pursuant to the terms of the respective Contracts, with a second closing date set for October 2, 2017. However, Plaintiff again failed to appear for the second TOE closings on October 2, 2017. Moreover, Plaintiff never sent any correspondence to Defendants

claiming any defects to title or that there was any issue to title or with the properties that would prevent closing.

14. Thereafter, in an attempt to complete the sale of the properties, on or about October 4, 2017, the Parties entered into negotiations, ultimately culminating in the execution of an Addendum for each of the Contracts. Copies of the Addendums are annexed to the Markowitz Dec. as **Exhibit "C"**.

15. The Addendum provided for, *inter alia*:

    i. the entire down payment to be released to the Defendant sellers immediately. See Markowitz Dec., Exhibit "C" at ¶ 2.

    ii. access to the properties by Plaintiff to make alterations and improvements, pursuant to a separate "Access Agreement". See Markowitz Dec., Exhibit "C" at ¶ 3.

    iii. a final TOE closing date of December 18, 2017. See Markowitz Dec., Exhibit "C" at ¶ 4.

    iv. an additional $169,000.00 down payment to be applied toward each Contract. See Markowitz Dec., Exhibit "C" at ¶ 5.

    v. Plaintiff to pay monthly mortgage interest for the Properties, from execution of the Addendum to the closing date[5]. See Markowitz Dec., Exhibit "C" at ¶ 6.

    vi. Defendant sellers agreed to enter into lease agreements with tenants selected by Plaintiff, provided lease commencement dates begin after the closing date. Leases shall be conditioned upon and only effective if Plaintiff closes on the property. See Markowitz Dec., Exhibit "C" at ¶ 7.

16. Subsequently, the entire down payment held by the Escrow Agent was released to the Defendants and the additional down payment of $169,000.00 per Contract (the "Additional Down Payment") was received by Escrow Agent.

---

[5] No amount for monthly mortgage interest was ever written in to the Addendum, which was left blank.

17. Despite agreeing to pay Defendants the referenced monthly mortgage interest reimbursement amounts, Plaintiff has never paid nor provided evidence of an attempt to pay this amount to the Defendants as agreed.

18. Plaintiff reviewed all leases in force at the time of signing of each Contract of sale. In agreement with the Plaintiff, all leases and the resultant tenancy implied thereof, were left as is. Contrary to the allegations at paragraphs 22 and 25 of the Complaint, prior to the Contract of sale, Defendant 700 Beck Street LLC entered into a legitimate, commercial lease with Chichi Therapeutic Services, Inc., as tenant ("Commercial Tenant"), on May 25, 2017. The Commercial Tenant provided a deposit pursuant to the lease agreement and was expected to remain in the premises for the full term of the lease. Indeed, Plaintiff reviewed and approved of the commercial tenant's lease. A copy of the lease agreement is annexed to the Markowitz Dec. as **Exhibit "D"**.

19. On or about October 17, 2017, Defendants 1988 Morris Ave LLC and 1974 Morris Ave LLC entered in to a License Agreement with the Plaintiff, to allow Plaintiff access to the respective properties to perform work on those properties, including flooring, paint scraping, kitchen renovations and staircase repair and renovation. <u>A copy of the License Agreement is annexed to the</u> Markowitz Dec. as **Exhibit "E"**.

20. On or about December 5, 2017, the Defendants' attorney sent the Plaintiff's attorney five TOE letters stating, with respect to each Contract, that the closing would be held on December 18, 2018, pursuant to the Addendums to the Contracts, at the offices of Defendants' attorneys. <u>Copies of the TOE letters are annexed to the</u> Markowitz Dec. as **Exhibit "F"**.

21. On or about December 15, 2017, Plaintiff's counsel, as a last-minute attempt to avoid the closings, sent three self-serving letters to Defendants' counsel, rejecting the TOE closing

date due to various issues with each closing. Copies of the rejection letters are annexed to the Markowitz Dec. as **Exhibit "G"**.

22. The first letter of rejection was with regard to 770 Beck Street, indicating (i) that "Riverside Abstract, the title company has advised us that no one from your offices have been in contact with them regarding clearing title," (ii) that unless Plaintiff's counsel receives "confirmation from the title company that you are ready, willing and able to deliver clear title, this TOE is premature and being untimely, is hereby rejected," and (iii) "the lease presented to us for the 1st floor of this Premises was fraudulent and thus a misrepresentation of material fact, which was one of the base inducement for entering into such a contract of sale." See Markowitz Dec., Exhibit "G".

23. The second letter of rejection was with regard to 1988 Morris Avenue, indicating (i) that "Riverside Abstract, the title company has advised us that no one from your offices have been in contact with them regarding clearing title," (ii) that unless Plaintiff's counsel receives "confirmation from the title company that you are ready, willing and able to deliver clear title, the TOE is premature and being untimely, is hereby rejected," and (iii) a vague allegation that the Plaintiff discovered that there was "substantial damage" to the premises which was not addressed by the Defendant. See Markowitz Dec., Exhibit "G".

24. The third letter of rejection was with regard to the remaining properties: 1974 Morris Avenue, 1821 Topping Avenue and 1143 Forrest Avenue in the subject line, however the body of the letter only addressed one property, 1821 Topping Avenue. The letter indicated (i) that Riverside Abstract, the title company has advised us that no one from your offices have been in contact with them regarding clearing title," (ii) that "1821 Topping Avenue has a lis pendens filed against the property which is not yet clear as per Title, and (iii) that unless Plaintiff's counsel

receives "confirmation from the title company that you are ready, willing and able to deliver clear title at Closing, this TOE is premature and being untimely, is hereby rejected." See Markowitz Dec., Exhibit "G".

25. Notwithstanding Plaintiff counsel's last-minute falsely based rejection letters, on December 18, 2017, the Defendant sellers appeared at the offices of their attorneys, Goldstein Hall PLLC, to close on the Contracts, pursuant to the December 5, 2017 letter and the Addendums. A court stenographer was present to transcribe testimony. The Defendants and their attorneys waited for approximately one hour, to provide time for the Plaintiff to appear. Upon the elapse of a reasonable amount of time, it was apparent that the Plaintiff would not appear at the closing. The Defendants' attorneys testified before the stenographer that they had appeared at the TOE closings, that Defendants were ready, willing and able to close, and that the Plaintiff and its attorneys failed to appear. A copy of the stenographer's report is annexed to the Markowitz Dec. as **Exhibit "H"**.

26. On December 19, 2018, the Defendants' attorney sent letters to the Plaintiff's attorney informing him that the Plaintiff was in default of the Contracts and that the Contracts would be deemed canceled, null and void. Defendants' attorney further informed Plaintiff's counsel that the Additional Down Payment would be kept as liquidated damages pursuant to the default provisions of the Contracts. Copies of the default letters are annexed to the Markowitz Dec. as **Exhibit "I"**.

27. Upon information and belief, Plaintiff was not ready, willing and able to close on the TOE closing date because it failed to obtain the requisite funding necessary to close on the Contracts.

28. Indeed, Defendants have been ready, willing and able to close title to each of the five properties. Defendants would have overcome each and every objection stated in the pretextual

December 15, 2017 rejection letters, through either depositing money in escrow, issuing a bond or utilizing the proceeds from the closing to extinguish any minor objections to title. As such, Plaintiff had no legitimate reason to not appear for the December 18, 2017 TOE closing.

29. Further, Plaintiff is beyond the contractual limitation period for seeking a return of the escrow amounts or for seeking specific performance. Pursuant to paragraph 14 of the Rider to the Contracts, the time for the Plaintiff to seek a return of the Down Payment and Additional Down Payments expired on March 19, 2018, ninety days after the notices of default were sent to the Plaintiff's attorney. See Markowitz Dec., Exhibit "B" at ¶ 14.

WHEREFORE, the Defendants respectfully request that this Court dismiss Plaintiff's adversary proceeding in its entirety, and grant such other and further relief as this Court deems just, proper and equitable.

_____
IHSAN SALEEM

Sworn to before me this
26th day of June, 2018.

_____
Notary Public

*[Notary Seal: TROY N CARSON, NOTARY PUBLIC, DEKALB COUNTY, GEORGIA, MY COMMISSION EXPIRES OCTOBER 23, 2021]*