UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re:                                                    Chapter 11

FMTB BH LLC,                                              Case No. 18-42228-cec

                         Debtor.
--------------------------------------------------------------x
FMTB BH LLC,                                             Adv. Pro. No. 18-01052-cec

                         Plaintiff,

        against

1988 MORRIS AVENUE LLC, 1974 MORRIS
AVENUE LLC, 700 BECK STREET LLC, 1143
 FOREST AVENUE LLC, and 1821 TOPPING
AVENUE LLC,

                         Defendants.
--------------------------------------------------------------x


**PLAINTIFF-DEBTOR'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Ave, 9th floor
New York, New York 10022
Tel:  212-603-6300
Fax: 212-956-2164
*Attorneys for Plaintiff-Debtor*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 2

STATEMENT OF FACTS ......................................................................................................... 4

   A.   The Contracts of Sale as Amended .................................................................................... 4

   B.   Events Subsequent to the Execution of the Contract Addendums...................................... 6

ARGUMENT ............................................................................................................................ 10

   A.   The Standard of Review..................................................................................................... 10

   B.   The Complaint States a Claim for Breach of Contract Because
       Plaintiff Was Not Required to Tender Performance Where the
       Complaint Pleads that Defendants Were Not Ready, Willing and Able to Close ............ 11

   C.   Plaintiff's Complaint Sufficiently Identifies the Contract Provisions Breached by
       Defendants ........................................................................................................................ 14

   D.   The Complaint Adequately Pleads Plaintiff's Entitlement to Specific Performance ........ 15

       1.   The Complaint Pleads That Plaintiff Was Ready, Willing and Able to Purchase ... 16

       2.   Defendants Cannot Rely on their Own Unlawful Repudiation of
          the Agreements to Preclude Specific Performance.................................................... 18

       3.   The Agreements Do Not Preclude Plaintiff from Seeking Specific Performance.... 19

   E.   Plaintiff's Claim for the Return of the Down Payments or Other Damages
       Should Not Be Dismissed ................................................................................................. 20

CONCLUSION........................................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 1111 Myrtle Ave. Group LLC*,
  575 B. R. 567 (S.D.N.Y. 2017) .................................................................13

*551 W. Chelsea Partners LLC v. 556 Holding LLC*,
  2008 N.Y. Misc. LEXIS 10742 (N.Y. Sup. Ct. Feb. 7, 2008) .........................................14, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................11

*Cohen v. Krantz*,
  12 N.Y.2d 242 (1963) .................................................................13

*Darby Trading Inc. v. Shell Intern. Training and Shipping Co. Ltd*,
  2008 WL 852787 (S.D.N.Y. March 31, 2008) .........................................16

*DiFolco v. MSNBC Cable LLC*,
  622 F.3d 104 (2d Cir. 2010) .................................................................11

*Donnerail Corp. N.V. v. 405 Park LLC*,
  100 A.D. 3d 131, 952 N.Y.S. 2d 132 (1st Dept. 2012) .........................................17

*E. Materials Corp. v. Mitsubishi Plastics Composites Am. Inc.*,
  2017 U.S. Dist. LEXIS 151831 (E.D.N.Y. 2017) .........................................4, 7, 9

*Ilemar Corp. v. Krochmal*,
  44 N.Y. 2d 702 (1978) .................................................................13

*Kendall v. Caliber Home Loans, Inc.*,
  198 F. Supp. 3d 168 (E.D.N.Y. 2016) .................................................11

*In re Oyster Bay Cove*,
  161 B.R. 338 (E.D.N.Y. 1993) .................................................................12

*Pesa v. Yoma Dev. Group, Inc.*,
  18 N.Y. 3d 527 (2012) .................................................................17, 19

*Sherman v. Real Source Charities, Inc.*,
  41 A.D.3d 946, 837 N.Y.S. 2d 432 (3d Dept. 2007) .........................................14

*Sunrise Assoc. v. Pilot Realty Co.*,
  170 A.D.2d 214, 565 N.Y.S.108 (1st Dept. 1991) .........................................18

**Other Authorities**

Fed R. Bankr. P. 7012(b) ................................................................................................................2

Fed. R. Civ. P. Rule 8(a)(2) ......................................................................................................3, 11

Fed. R. Civ. P. 12(b)(6)...................................................................................................2, 3, 10, 11

Debtor-Plaintiff, FMTB BH LLC (the "Debtor" or the "Purchaser"), by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., respectfully submits this memorandum of law in opposition to the motion to dismiss the Complaint in this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b) (the "Motion") by Defendants, 1988 MORRIS AVENUE LLC, 1974 MORRIS AVENUE LLC, 700 BECK STREET LLC, 1143 FOREST AVENUE LLC, and 1821 TOPPING AVENUE LLC (collectively, the "Sellers"). As discussed below, the Motion should be denied in its entirety as the Complaint adequately states claims for breach of contract to sell real estate giving rise to the remedy of specific performance, or in the alternative, for damages, and also states a claim for the Debtor's assumption of the contracts at issue pursuant to section 365 of the Bankruptcy Code.[1]

## PRELIMINARY STATEMENT

The Debtor is a limited liability company which contracted with each of the five defendant companies to purchase five separate pieces of real property located at (a) 1821 Topping Avenue, Bronx New York, which is owned by 1821 Topping Ave LLC; (b) 1974 Morris Avenue, Bronx, New York, which is owned by 1974 Morris Ave LLC; (c) 1988 Morris Avenue, Bronx, New York, which is owned by 1988 Morris Ave LLC; (d) 770 Beck Street, Bronx, New York, which is owned by 700 Beck Street LLC; and (e) 1143 Forest Avenue, Bronx, New York, which is owned by 1143 Forest Ave LLC ((a) – (e), together, the "Properties"), pursuant to virtually identical contracts. The Debtor filed this adversary proceeding to enforce its rights under each of the contracts after the Defendants were not ready, willing, and able to convey insurable title for the Properties for the various reasons described in the Complaint, but

---

[1] The Debtor in its Complaint also included a third cause action seeking to assume the contracts of sale for the Properties, however, the Sellers in their Motion fail to address this third cause of action.

instead staged a sham "time of the essence" closing, pursuant to which they purported to terminate the contracts and retain Debtor's contract deposits, after which they refused to convey the Properties to the Debtor without an adjustment to the purchase prices. Complaint, ¶ 2.

The Defendant's actions placed the Debtor in an intolerable position with respect to its creditors. The Defendants essentially absconded with over $800,000 in deposits under the contract of sale without conveying the Properties to the Debtor's estate. This left the Debtor in a position where it had no way to repay the significant debts it had incurred in connection with its proposed acquisition of the Properties. And, because the Debtor did not have the Properties either, it could not lease them to extract cash flow, sell or refinance some or all of the Properties to address its financial obligations.[2]

The Defendants' motion to dismiss is a knee-jerk reaction to the Complaint, which gives lip service to the well-established standards applicable to a pre-answer motion to dismiss under Rule 12(b)(6) but then proceeds to ignore those standards entirely. Relying throughout their memorandum of law on inapplicable case law decided on summary judgment and even post-trial motions, the Defendants' Motion asks this Court to accept a version of the facts contrary to the well-pled allegations of the Complaint and then strains to fit the Defendants' alternate version of the facts into the applicable New York State law governing a real estate purchaser's right to obtain specific performance from a defaulting seller. As is shown below, when the facts pled in the Complaint are accepted as true and reasonable inferences are drawn in favor of the Debtor, as is appropriate when considering this Motion, the Complaint easily satisfies the pleading requirements of Fed. R. Civ. P. Rule 8(a)(2), mandating the denial of the Motion.

---

[2] In the event that this Court grants specific performance requiring the Defendants to convey insurable title to the Debtor, the Debtor is prepared to close the purchases with financing obtained from or by its investors.

# STATEMENT OF FACTS

The following summary of the relevant facts is drawn from the Complaint rather than the version of the facts that the Defendants ask this Court to accept in their Motion based on their submission of the declarations of a client representative and of one of their attorneys, which to the extent it repeats the Defendants' version of the "facts," is apparently based entirely on hearsay.[3]

The Complaint asserts three causes of action, for (i) breach of contract seeking the remedy of specific performance given the unique real properties at issue, (ii) in the alternative, breach of contract seeking damages, and (iii) the assumption of the contracts pursuant to section 365 of the Bankruptcy Code.  The same facts support both breach of contract causes of action.

## A.  The Contracts of Sale as Amended

Plaintiff entered into separate contracts of sale dated as of June 19, 2017 with each of the defendant limited liability companies for the purchase of the Properties.  Each of the contracts is identical (except as to the purchase price and down payment required) and based on the standard form "Residential Contract of Sale" promulgated by the Real Property Section of the New York State Bar Association and other bar associations in New York, version 11/00.  In addition, each

---

[3] The Defendants' Motion includes the Declaration of Hhsan Saleem dated June 21, 2018 who alleges that he is a member of each of the defendant LLCs, and the Declaration of attorney Brian J.  Markowitz dated June 21, 2018, which attaches the Complaint as Exhibit A and the contracts at issue and addendums as Exhibits B and C, respectively.  The Markowitz declaration also includes various other documents as Exhibits D through I, several of which are not properly considered on this Motion as they are outside the pleadings. *See E. Materials Corp.  v. Mitsubishi Plastics Composites Am. Inc.*, 2017 U.S. Dist. LEXIS 151831 *12 (E.D.N.Y. 2017)(refusing to consider documents outside of the Complaint on a motion to dismiss under Rule 12(b)(6) or to convert the motion to a motion for summary judgment).  As discussed more fully *infra*, Plaintiff respectfully requests that the Court not consider Exhibits D (a purported lease), E (a license agreement), and H (the purported transcript of the sham ex parte closing).

contract contains an identical Seller's Rider to Contract, and each was later modified by a written addendum dated October 4, 2017 (collectively, the "Agreements").[4]  Complaint, ¶ 14.

The purchase price for each of 1988 Morris Ave. and 1974 Morris Ave. is $516,666.67, with a required down payment of $25,833.33.  The purchase price for each of 1821 Topping Ave., 770 Beck St. and 1143 Forest Ave. is $688,888.89, with a required down payment of $34,444.44. The Agreements provide that the sale of the properties is not subject to any existing mortgage, and there is no mortgage commitment contingency.  Complaint, ¶¶ 15 – 16.

A key contention of the Debtor is that the Sellers were not ready, willing and able to close on the "time of the essence" closing date specified in an addendum to each of the Agreements (the "TOE Date") because the Sellers had not shown that they were able to satisfy certain exceptions to title, "including without limitation, open mortgages, New York City environmental control Board (ECB) monetary judgments, ECC filings, sidewalk violations, landmark violations, missing deeds and a notice of pendency".  Complaint, ¶ 20-22.  It is, therefore, significant that paragraph 13 of the Agreements requires that the Sellers give insurable title to the Purchaser "…as any reputable title insurance or abstract company of Purchaser's choice licensed to do business in the State of New York shall be willing to approve and insure in accordance with its standard form of title policy, subject only to the matters provided for in the [Agreements]".  Complaint, ¶ 16.  The permitted exceptions to title in the Agreements are limited and set forth in paragraph 9 of each contract and paragraphs 2 and 7 of the Rider to each contract.  *Id*.

---

[4] Copies of the Agreements, including their riders, are annexed as Exhibit B to the Markowitz Declaration.

The Agreements also contained a provision concerning the physical condition and state of repair of the premises to be sold. As pled in the Complaint, Paragraph 5 of the Rider attached to each contract describes the required condition of each property, essentially stating that the Purchaser is aware of the physical condition and state of repair of the premises and shall accept the same as is in their present condition and state of repair, subject to reasonable use, wear and tear and natural deterioration between the contract date and the date of closing, except that the appliances, plumbing, heating, and electrical systems shall be in working order and the roof should be free of leaks at closing.

Initially, the Agreements did not contain a time of the essence clause, providing the closing shall take place "on or about 60 days" from the contract date. Complaint, ¶ 17. When the contracts were each amended pursuant to a written Addendum executed on October 4, 2017, the down payments held by the Sellers were released to them, the Purchaser was required to wire additional down payments in the amount of $169,000 for each of the five properties, and the parties agreed to a TOE Date of December 18, 2017. Complaint, ¶¶ 18 – 19.

**B. Events Subsequent to the Execution of the Contract Addendums**

Following the execution of the contracts and the Addendum to each contract, Purchaser's attorney ordered an examination of title in respect of the properties as is customary and as is provided in the contracts in paragraph 21 thereof. On or about November 14, 2017, Purchaser's attorney delivered to Sellers' counsel by email a list of title objections or violations as appeared on the title examination, including in the email a list of the documents or information needed to obtain insurable title with respect to each property, in accordance with paragraph 7 of the Riders. Complaint, ¶ 20.

There were numerous items on the title exceptions report for each of the properties that needed to be addressed by the Sellers in order for the Sellers to be able to deliver insurable title in accordance with the contracts of sale. Complaint, ¶ 21. In addition to resolving the title issues before a closing could occur, the Sellers were required to address a question that arose as to the status of a purported lease for the first floor of at one of the properties, 770 Beck St., which was not sufficiently resolved to the satisfaction of the Purchaser. Complaint, ¶ 22. The Defendants have submitted with their Motion a copy of a purported lease with a tenant (Markowitz Declaration, Exhibit D) and contend in the Saleem Declaration, contrary to the allegations of the Complaint, that the lease was provided to Plaintiff at some point. The purported lease should not be considered on this Motion as it is outside the four corners of the complaint. *Mitsubishi Plastics*, 2017 U.S. Dist. LEXIS 151831 *12.

Still further, another of the properties, 1988 Morris Ave., was discovered to have water and electrical damage, mold, and roofing issues sustained after the date the contract date. In an effort to remediate the situation, the Seller permitted the Purchaser to undertake repairs pre-closing, the costs of which the Purchaser advanced in the amount of at least $30,000, and which required inspection before closing. Complaint, ¶ 23.[5]

On or about December 6, 2017, before such time as the Sellers had resolved (i) the title exceptions for each of the properties or provided the relevant documents requested by the title company, (ii) the lease issue at 770 Beck St., or (iii) the Purchaser's request to inspect the damage at 1988 Morris Ave., the Sellers changed their attorneys to Brian Hsu, Esq. of the firm

---

[5] Defendants have attached to the Markowitz Declaration as Exhibit E, a copy of a purported License Agreement between 1988 Morris Ave. LLC and Plaintiff dated as of October 17, 2017, which permitted Plaintiff to access those premises to make repairs. The License Agreement should not be considered on this motion as it is outside the four corners of the complaint. *Mitsubishi Plastics*, 2017 U.S. Dist. LEXIS 151831 *12.

Goldstein Hall, New York NY, the same law firm that represents the Defendants herein.  Mr.

Hsu began pressing to close the transactions by the TOE date of December 18, 2017, without

regard to the Sellers' ability to address the substantial impediments to closing which were the

Sellers' obligations to resolve before the Sellers could be ready, willing and able to close.

Complaint, ¶ 24.

On December 5, 2017, Mr. Hsu sent a letter by email and certified mail on behalf of each

of the Sellers to the Purchaser's counsel, purporting to confirm the TOE Closing Date.  Copies of

the letters are annexed to the Markowitz Declaration as Exhibit F.  An attorney for the Purchaser,

Abraham Weisel, immediately began discussing with Mr. Hsu the various open issues which

needed to be resolved before the closing could occur, including, among other things, an

inspection of the 1988 Morris Avenue property that had been damaged, as was the Purchaser's

right pursuant to paragraph 12 of the contract, and the open issues concerning the veracity of the

alleged lease at the 770 Beck Street property.  Complaint, ¶ 25.

As of December 11, 2017, Mr. Hsu advised the Purchaser's attorney by email that he had

still not obtained the Seller's permission to access to the 1988 Morris Ave. property for

inspection.  Complaint, ¶ 26. The attorneys for the Sellers and the Purchaser continued to

exchange numerous emails about the various open issues required to be resolved before the

closing of the sales could occur in accordance with the Agreements.  Furthermore, the

Purchaser's title insurance company, Riverside Abstract, which would be required to attend any

closing and to issue an insurance policy insuring title as a condition of closing, was not then able

to do so given the Sellers' failures to satisfy the various exceptions to title that had previously

been identified and delivered to Sellers' counsel.  *Id.*

On or about December 15, 2017, Purchaser's attorney, Izidor Mikhli, sent Mr. Hsu three letters by email rejecting Mr. Hsu's purported TOE letter of December 11, 2017 and his attempt to schedule the closing for each of the properties. Copies of the letters are annexed to the Markowitz Declaration as Exhibit G. In his letters, Mr. Mikhli identified various issues requiring resolution before closing could occur pursuant to the Agreements. These issues are alleged in the Complaint in full at ¶ 27 (i) through (iii), and they include the fact that the designated title insurance company, Riverside Abstract, had advised Purchaser's counsel that no one from Seller's attorney's offices had been in touch with them about clearing title.

Notwithstanding Mr. Mikhli's correspondence to Mr. Hsu of December 15 identifying the impediments to the ability of the Sellers to deliver insurable title at closing or to address the other issues, including with regard to the condition of one of the properties and a lease on another, Mr. Hsu did not respond to Mr. Mikhli until after he engineered and presided over a purported sham closing on December 18, 2017.[6] As alleged in the Complaint, the title company, Riverside Abstract, was not present at the sham closing. Complaint, ¶ 29. Only after the purported closing did Mr. Hsu send a letter to Mr. Mikhli, on December 19, 2017, purporting to address the impediments to closing and the claims in Mr. Mikhli's December 15, 2017 letters, and advising that the Sellers were terminating the Agreements, and retaining the down payments and additional down payments provided pursuant to the contract Addendums. Complaint, ¶ 28.

The Complaint alleges that after the sham TOE closing on December 18, the parties continued through their counsel to discuss the open issues, including the exceptions to title,

---

[6] In the Motion, Defendants have attached copies of purported court reporter transcripts of what occurred at the sham closings on December 18, 2017, as exhibit H to the Markowitz Declaration. These transcripts should not be considered on this motion to dismiss as they are outside of the Complaint. *Mitsubishi Plastics*, 2017 U.S. Dist. LEXIS 151831 *12.

through at least the middle of March 2018. During those discussions, the Sellers attempted to extract a substantial increase in sales price set forth in the Agreements. Thereafter, the Sellers refused to close on the Agreements or to return any portion of the contract deposits to the Purchaser. Complaint, ¶ 31. Furthermore, upon information and belief, the Sellers began remarketing the Properties with a higher purchase price while they continued to refuse to close with Debtor, retained the additional payments made pursuant to the Addendums, and failed to refund the expenses incurred by the Debtor in connection with the Contracts and the Properties. The Debtor had no way to satisfy its obligations to its creditors if it was unable to close on the Properties. Left with no way to hold its creditors in abeyance, the Debtor made the decision to commence its chapter 11 case and commence this adversary proceeding as the appropriate way to vindicate its rights under the Contracts and seek to reorganize its financial affairs.

## ARGUMENT

**THE COMPLAINT PROPERLY PLEADS A CAUSE OF ACTION FOR BREACH OF CONTRACT SUPPORTING THE REMEDIES OF SPECIFIC PERFORMANCE, OR IN THE ALTERNATIVE, DAMAGES**

### A. The Standard of Review

There is no dispute about the standard of review governing this motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). While the Defendants acknowledge the familiar standard, they proceed to completely ignore it and to argue facts in dispute rather than addressing the legal sufficiency of what is actually pled in the Complaint. The Defendants' arguments should be rejected and the Motion denied because the Complaint's allegations state a plausible claim for breach of contract for the sale of real estate, for which specific performance is an appropriate remedy, or in the alternative, for money damages.

To survive a motion to dismiss pursuant to Rule 12 (b)(6), Plaintiff's Complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And, Rule 8(a)(2) of the Fed. R. Civ P. requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8, a complaint is not required to allege "detailed factual allegations," *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016), and the Court is not to assess the weight of the evidence which might be offered in support of the Complaint. *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 113 (2d Cir. 2010).

### B. The Complaint States a Claim for Breach of Contract Because Plaintiff Was Not Required to Tender Performance Where the Complaint Pleads that Defendants Were Not Ready, Willing and Able to Close

Both the First Cause of Action (breach of contract seeking specific performance) and Second Cause of Action (breach of contract seeking money damages) plainly allege that as of the December 18, 2017 TOE date, the Sellers were not ready, willing and able to proceed to closing for the sale of the respective properties. *See e.g.*, Complaint, ¶ 35, ¶ 42. Defendants contend in the Motion that Plaintiff is unable to state a breach of contract claim because Plaintiff did not attend the sham TOE closing on December 18, 2017 and tender performance. This argument ignores the facts pled in the Complaint showing that attending the sham closing and making some type of a formal tender would have been an empty gesture because Plaintiff had already apprised Defendants on or about November 14, 2017 of the title defects and building violations that needed to be cleared (Complaint, ¶ 20), had requested and been denied the ability to inspect

the water and roofing damage that had occurred at 1988 Morris Ave. as of December 11, 2017 (Complaint, ¶23), and was continuing to seek a verified lease at the 770 Beck St. property (Complaint, ¶ 25).  Moreover, after Defendants' attorney, Mr. Hsu, scheduled the sham closing for December 18, 2017, Plaintiff's attorney sent Mr. Hsu letters dated December 15, 2017 rejecting the purported TOE closing date and identified the reasons why Sellers were not ready, willing and able to close.

Defendants contend that notwithstanding the issues the parties were working through regarding title and the condition of the properties, Plaintiff was still obligated to tender performance because the issues that had been raised were curable at a closing.  Whether the title defects and other impediments to closing that had been identified were curable, however, is clearly a question of fact which precludes dismissal of the Complaint.  The cases cited by Defendants are not to the contrary.  Indeed, the cases cited by Defendants on pages 5 – 6 of their supporting Memorandum of Law for the proposition that a purchaser must tender are based on a factual analysis conducted either on summary judgment or after trial, not on a motion to dismiss a complaint that pleads plausible facts in satisfaction of the elements of a breach of contract claim.  For example, *In re Oyster Bay Cove*, 161 B.R. 338 (E.D.N.Y. 1993) concerned a Chapter 7 trustee's application to declare a purchaser at a section 363 sale in default and seeking the forfeiture of his deposit.  The Court's analysis turned on a review of the Terms of Sale and the lack of evidence presented by the buyer to sustain his defense that the property did not have marketable title.  Here, by contrast, the Complaint pleads that the exceptions to title were not satisfied as of the TOE date and that the Sellers were informed of those objections.  Moreover, of course there has been no exchange of evidence at all in this case.

The decision in *In re 1111 Myrtle Ave. Group LLC*, 575 B. R. 567 (S.D.N.Y. 2017), relied on heavily by Defendants, is a *post-trial* decision where the debtor-plaintiff was a seller of real property seeking to retain a contract deposit. The Court held a two-day trial of the issues relating to responsibility for the failure to close, heard testimony from seven witnesses, and received 50 documents in evidence. 575 B.R. at 570. In making its factual findings that the purchaser had failed to demonstrate a lawful excuse for its failure to close, the Court specifically noted that it had "considered the credibility of the witnesses based on the Court's observation of their testimony and demeanor and the rest of the evidence introduced at trial." *Id*. Accordingly, the case is inapplicable to a motion to dismiss addressing solely the allegations of the Complaint.

In *Ilemar Corp. v. Krochmal*, 44 N.Y. 2d 702 (1978), the Court affirmed an Appellate Division order which reversed, on the law and the facts, a trial court decision granting summary judgment in favor of plaintiff. The Court noted the facts developed in discovery showing that tender of performance by the purchaser was not excused because the title defect was curable, and the vendor was never advised by the purchaser of the defects which it allegedly found objectionable, which were, in fact, subsequently cured. Here, of course there has been no discovery or proof of facts, and the Complaint specifically alleges that the Sellers were advised of the title defects, and that the title company did not attend the TOE closing. There is no allegation that any of the defects have been subsequently cured.

Similarly, in *Cohen v. Krantz,* 12 N.Y.2d 242, 246 (1963) the New York Court of Appeals affirmed an Appellate Division decision that had reversed *findings of fact* by the trial court on the ground that a plaintiff's advance rejection of title prior to closing and demand for immediate return of his deposit was unjustified as it prevented the alleged title defects from ever amounting to a default. Such fact-finding is, of course, inappropriate on a motion to dismiss.

Finally, *Sherman v. Real Source Charities, Inc.*, 41 A.D.3d 946, 947, 837 N.Y.S. 2d 432, 433 (3d Dept. 2007), was another summary judgment appeal, in which the Appellate Division reversed the denial of a buyer's motion for summary judgment on the ground that the seller failed to raise any triable issues of fact as to the buyer's default under the contract of sale. Again, the decision does not provide support for a motion to dismiss where fact-finding is inappropriate.

Rather than supporting dismissal of the Complaint, these cases demonstrate that questions concerning (i) whether the title defects of which the Seller-Defendants were aware were curable and (ii) whether they excused performance by Plaintiff, are inappropriate for decision on a motion to dismiss. *See 551 W. Chelsea Partners LLC v. 556 Holding LLC*, 2008 N.Y. Misc. LEXIS 10742*6 (N.Y. Sup. Ct. Feb. 7, 2008)("A showing of readiness, willingness, and ability is not required when opposing a motion to dismiss under CPLR 3211" *citing Moray v. DBAG, Inc.*, 305 A.D. 2d 472, 473, 760 N.Y.S.2d 193 (2d Dept. 2003)). Whether the title defects were curable, and whether the Seller-Defendants anticipatorily breached the Agreements by failing to cure title defects, or to provide access for inspection to Plaintiff as to one property, or a valid lease as to another, are inherently factual issues that require a fully-developed evidentiary record to be adjudicated. That is particularly the case where, as here, the Complaint pleads all the elements necessary for a breach of contract, including that the Plaintiff-Buyers were ready, willing and able to close if the Seller-Defendants complied with the Agreements. Accordingly, the Motion should be denied.

## C. Plaintiff's Complaint Sufficiently Identifies the Contract Provisions Breached by Defendants

Defendants' argument that the first and second causes of action in the Complaint do not sufficiently state which contractual provisions were breached is easily disposed of. Unlike the cases cited by Defendants in their memorandum of law at pp. 7-8, this is not a case where there is any dispute as to which contracts (with their riders and addendums) are at issue. The Complaint is adequate to put Defendants on notice that the claimed breach is the Defendants' premature cancellation of the Agreements and their retention of the Plaintiff's deposits, where the Defendants were not ready, willing and able to close on the purported TOE date. *See e.g.* Complaint, ¶ 16 (identifying the obligation in Agreement paragraph 13 that Sellers give Purchaser such title as a reputable title insurance or abstract company is willing to approve and ensure, the permitted exceptions to title stated in paragraph 9, and the required condition of the properties as stated in paragraph 5 of the Rider); Complaint, ¶ 21 (identifying the numerous items on the title exceptions reports), ¶ 22 (identifying the lease issue) ¶ 23 (identifying the water, electrical, mold and roofing issues at 1988 Morris Ave.), and ¶ 35 (pleading that as of the TOE date the Sellers were not ready, willing and able to proceed to closing for the reasons set forth above, which resulted in the Sellers' inability to convey title to Plaintiff in accordance with the respective Agreements).

### D.  The Complaint Adequately Pleads Plaintiff's Entitlement to Specific Performance

In arguing that specific performance is not available as remedy to Plaintiff, Defendants utterly ignore the standard to be applied on a motion to dismiss, repeatedly using the phrase "Plaintiff has failed to demonstrate" to describe Plaintiff's purported failure to show that it is ready, willing and able to close once Defendants clear title and resolve the other impediments to closing identified in the Complaint. Defendants ignore that on a motion to dismiss Plaintiff is not required to "demonstrate" any facts. Rather, Plaintiff's obligation at this stage is only to

plead facts which, if later proved, nudge its claims across the line from conceivable to plausible. *See Darby Trading Inc. v. Shell Intern. Training and Shipping Co. Ltd,* 2008 WL 852787, at 3 (S.D.N.Y. March 31, 2008) (internal quotations omitted); *see also 551 W. Chelsea Partners LLC v. 556 Holding LLC*, 2008 N.Y. Misc. LEXIS 10742*6 (N.Y. S. Ct. Feb. 7, 2008) ("[a] showing of readiness, willingness, and ability is not required when opposing a motion to dismiss," but most be proven *at trial*).  As discussed below, Plaintiffs have met that pleading burden.

### 1.   The Complaint Pleads That Plaintiff Was Ready, Willing and Able to Purchase

In the Complaint, Plaintiff pleads several times that but for each Seller's breach of their obligations under the Agreement to deliver insurable title, Plaintiff was ready, willing and able to close on the sale is anticipated by each Agreement and that the Sellers had no right to terminate the Agreements.  Complaint, ¶ 37-38.  Plaintiff will certainly demonstrate in discovery that it had no problem obtaining the necessary funds to complete the purchases contemplated by the Agreements.  In the Motion, Defendants do not identify a single document, email or anything else indicating that financing was an issue.  At no time was the alleged inability to finance the transaction raised as an impediment to closing by Plaintiff or its counsel.  *See e.g.* Markowitz Declaration, Exhibit G (letters from Plaintiff's counsel dated December 15, 2017 objecting to setting a TOE closing when Defendants were not ready to deliver insurable title and not mentioning financing issues).  Defendants' insinuation that financing must have been an issue is pure speculation.

Once again, the cases cited by Defendants in their moving memorandum of law, pages 9-11, in support of their argument are all summary judgment decisions.  In each of those cases there was an evidentiary record that formed the basis for the courts' decision whether the buyer

had demonstrated that it was ready, willing and able to close the transaction but for the seller's repudiation. For instance, in *Donnerail Corp. N.V. v. 405 Park LLC*, 100 A.D. 3d 131, 137, 952 N.Y.S. 2d 132, 142 (1ˢᵗ Dept. 2012), the Appellate Division affirmed the trial court's denial of the defendant's motion for summary judgment seeking return of its contract deposit for the seller's breach by failing to tender an unencumbered title at closing. The Appellate Division noted that the discovery in the case demonstrated that there was no doubt that the buyer had failed to perform its contractual obligations, citing the deposition testimony of the title insurance company representative who testified that the title company was prepared to issue title insurance at the closing without exception.

Similarly, in *Pesa v. Yoma Dev. Group, Inc.*, 18 N.Y. 3d 527, 533 (2012), the New York Court of Appeals, reviewing a grant of summary judgment in favor of plaintiff, upheld the rule requiring non-repudiating buyers to show their readiness, willingness and ability to perform. The Court clarified that the burden of proof of such a showing is on the non-repudiating buyer, although they need not tender performance. In upholding the trial court's grant of summary judgment against the buyer, the Court of Appeals noted that the evidence of financial condition submitted by the buyer was not conclusive on the issue of their ability to make the purchases, so summary judgment was properly denied. But the Court also denied summary judgment to the plaintiff-seller, because "the record does not conclusively show that the buyers were not ready, willing and able to close the transaction…" nor that the seller had not repudiated. *Id*. at 533–34. Thus, the case turned on a review of the evidence submitted on summary judgment.

The cases cited by Defendants thus do not support dismissal of the specific performance remedy sought in the Complaint. To the contrary, they stand for the principle that whether a buyer has shown that it is ready, willing, and able to perform, or whether a seller has repudiated

a contract unlawfully, are questions of fact requiring an analysis of the evidence presented, not questions that should be decided on the face of a pleading through a motion to dismiss. *See Sunrise Assoc. v. Pilot Realty Co.*, 170 A.D.2d 214, 565 N.Y.S.108 (1st Dept. 1991)(Defendant not entitled to dismissal on a motion to dismiss on the ground that plaintiff failed to demonstrate that he was ready, willing and able to close before the commencement of the action).

Nor are the Debtor's schedules filed in this Court in connection with its Petition or its disclosures of its current cash position at a recent 341 meeting of the creditors dispositive of whether Plaintiff could close were the Court to order Defendants to specifically perform their contracts by delivering insurable title and selling the properties to Plaintiff. There has been no examination of Debtor or a determination of the ability of its members to supply sufficient funds to close the purchases. Once again, these are matters for discovery, not a pleading motion. The cases cited by Defendants as support for the principle that specific performance is not intended to leave the court in a supervisory role are inapposite. Def. Mem. at p. 12-13. Those cases involved complex construction projects and would have required ongoing supervision by the courts. In contrast, there would be no ongoing supervisory role by the Court here. If Defendants were ordered to specifically perform the Agreements, closing of the transactions would occur promptly upon their delivery of insurable title, which would not require any exceptional ongoing and lengthy supervision by the Court.

        **2.       Defendants Cannot Rely on their Own Unlawful Repudiation of the Agreements to Preclude Specific Performance**

The fact that the Defendants' counsel arranged for a sham closing and invited a court reporter to make a record of their self-serving statements knowing that Plaintiff contended that the Defendants were not ready, willing and able to deliver insurable title, does not support the

dismissal of the claim seeking specific performance.  If the Defendants are shown to have wrongfully repudiated the Agreements, the remedy of specific performance would be available to Plaintiff if it sustains its burden a to show that it was ready, willing and able to perform.  *See Pesa*, 18 N.Y. 3d 527 at 532 (affirming the rule that when a contract has been repudiated, the non-repudiating party need not actually tender performance, or attend the ceremony of a futile tender, but must be ready, willing and able to perform).[7]  If the rule were otherwise, a defaulting seller of real property could always avoid specific performance by simply canceling the contract unilaterally, which is precisely what is alleged in the Complaint.  Defendants thus cannot rely on their own alleged repudiation of the Agreements to avoid the specific performance remedy if their repudiation is shown to be a breach of the Agreements.

### 3. The Agreements Do Not Preclude Plaintiff from Seeking Specific Performance

The Agreements provide expressly in section 23(b) that [i]f Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance”.  Defendants somehow read this section as a contractual prohibition on specific performance notwithstanding its plain language to the contrary, focusing on the necessity of a Seller default for the remedy to apply.  We agree that the Seller must be found in default, *i.e.,* in breach of contract, for the remedy of specific performance to apply.  The problem with Defendants’ argument on this Motion is that it ignores that the Plaintiff has pled Defendant-Sellers’ default.  While the Defendants obviously deny they breached, the question has yet to be adjudicated.  It remains to be seen after discovery and a

---

[7] Once again, the cases cited by Defendants in their memorandum of law for the proposition that specific performance is unavailable once a contract has been terminated do not support dismissal on a motion to dismiss. They were each decided on summary judgment or post-trial motions in which the issue of whether termination of the contract was appropriate was adjudicated on a fully developed evidentiary record.  See Pl. Mem of Law at 13-14.

summary judgment motion or trial whether Plaintiff or Defendants are right as to whether Defendants' termination of the contracts and refusal to close constitutes a default under the Agreements. What is clear, however, is that there is no basis to strike Plaintiff's demand for specific performance based on the language of section 23(b) of the agreements on this Motion.

### E. Plaintiff's Claim for the Return of the Down Payments or Other Damages Should Not Be Dismissed

Plaintiff's Second Cause of Action is pled as an alternative to the First Cause of Action seeking specific performance. The Second Cause of Action is for the damages incurred by the plaintiff by reason of the defendants' breach of contract, which includes the contract deposits and additional deposits paid by Plaintiff under the Addendums, together with amounts advanced by the Plaintiff for the repair of the 1988 Morris Ave. property.

Defendants seek dismissal of this claim for damages, relying on paragraph 14 of the "Seller's Rider to Contract" attached to each of the Agreements (Markowitz Decl., Exhibit B). A close reading of paragraph 14, however, shows that it is *not* a contractual 90- day limitations period in which to recoup any down payment, as Defendants contend. Rather, that section deals with the rights and obligations of the Sellers' attorney as escrow agent, not the rights of the Purchaser vis-à-vis the Sellers. The plain import of the section is to limit the liability *of the escrow agent* and to authorize him to deliver the down payment to the Sellers if the Purchaser does not commence an action for the return of the down payment within 90 days of written notice thereof. Paragraph 14 does not on its face limit the ability of the Purchaser to sue *the Sellers* for the return of its contract deposit or other damages. That paragraph is simply not applicable to and does not modify the rights of the Purchaser in any respect except as to the

Sellers attorney as escrow agent.  For that reason, the motion to dismiss the Second Cause of Action should be denied.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss by the Defendants-Sellers should be denied in all respects and a discovery schedule for the adversary proceeding should be set.

Dated: July 18, 2018

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.

By:__/s/ Lawrence S. Hirsh_____
        Lawrence S. Hirsh, Esq.

875 Third Avenue, 9th Fl.
New York, New York 10022
(212) 603-6305
*Attorneys for the Plaintiff-Debtor*