GOLDSTEIN HALL PLLC
Attorneys for Defendants
80 Broad Street, Suite 303
New York, New York 10004
Tel: (646) 768-4127
Fax: (646) 219-2450
By:    Brian J. Markowitz (BM-9640)
       bmarkowitz@goldsteinhall.com
       Daniel Goldenberg (DG-1337)
       dgoldenberg@goldsteinhall.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISCTRICT OF NEW YORK

--------------------------------------------------------------- X
In re:                                                           :    **Chapter 11**
                                                                 :
FMTB BH LLC,                                                     :    Case No. 18-42228 (CEC)
                                                    Debtor.      :
--------------------------------------------------------------- :    Adv. Pro. No. 18-01052 (CEC)
FMTB BH LLC,                                                     :
                                                    Plaintiff,   :
            -against-                                            :
                                                                 :
1988 MORRIS AVENUE LLC, 1974 MORRIS                              :
AVENUE LLC, 700 BECK STREET LLC, 1143                            :
FOREST AVENUE LLC, and 1821 TOPPING                              :
AVENUE LLC                                                       :
                                                    Defendants.  :
--------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT'S MOTION FOR AN
ORDER PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(B)(6) AS MADE APPLICABLE
HEREIN BY FEDERAL RULE OF BANKRUPTCY
PROCEDURE 7012(B) DISMISSING PLAINTIFF'S
ADVERSARY PROCEEDING ON THE GROUND
THAT IT FAILS TO STATE A CLAIM UPON WHICH
RELIEF MAY BE GRANTED**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS....................................... 1

ARGUMENT .................................................................................................................. 4

      A.  STANDARD OF REVIEW .................................................................... 4

      B.  PLAINTIFF MUST HAVE TENDERED PERFORMANCE
           AND DEMANDED GOOD TITLE IN ORDER TO STATE
           A CLAIM FOR SPECIFIC PERFORMANCE ...................................... 6

      C.  PLAINTIFF MUST HAVE COMMENCED AN ACTION
           WITHIN 90 DAYS FROM DEFENDANTS' ALLEGED
           DEFAULT ............................................................................................. 8

      D.  PLAINTIFF DOES NOT SUFFICIENTLY STATE
           WHICH CONTRACTUAL PROVISIONS WERE
           BREACHED ......................................................................................... 10

      E.  DEFENDANTS HAVE NOT REPUDIATED THE
           CONTRACTS....................................................................................... 11

CONCLUSION............................................................................................................. 14

## PRELIMINARY STATEMENT

Defendants 1988 Morris Ave LLC (incorrectly sued herein as 1988 Morris Avenue LLC), 1974 Morris Ave LLC (incorrectly sued herein as 1974 Morris Avenue LLC), 700 Beck Street LLC, 1143 Forest Ave LLC (incorrectly sued herein as 1143 Forest Avenue LLC) and 1821 Topping Ave LLC (incorrectly sued herein as 1821 Topping Avenue LLC), (collectively the "Defendants"), by their attorneys, Goldstein Hall PLLC, respectfully submit this reply Memorandum of Law in further support of Defendants' motion for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable herein by Federal Rule of Bankruptcy Procedure 7012(b), dismissing Plaintiff's adversary proceeding on the grounds that it fails to state a claim upon which relief may be granted, and for such other relief as the Court deems just, proper and equitable.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

The Court is respectfully referred to the Declaration of Brian J. Markowitz (the "Markowitz Dec.") and Declaration of Ihsan Saleem (the "Saleem Dec.), both dated June 21, 2018 for a complete statement of the procedural history and relevant facts of this case.

As will be more fully set forth below, Plaintiff's opposition fails to address several of Defendants' arguments, mischaracterizes precedent (in a severely material manner), and, fundamentally, Plaintiff attempts to recover its unavailable and deficient claims by hiding behind conclusory assertions that it claims must be provided deference because this is a Motion to Dismiss. However, Plaintiff's pleadings are deficient, must be dismissed and Plaintiff's opposition cannot salvage it.

Plaintiff's Memorandum of Law states that it "filed this adversary proceeding to enforce its rights under the contracts after the Defendants were not ready, willing, and able to convey insurable title for the Properties for the various reasons described in the Complaint."

Plaintiff's Memorandum of Law at p. 1. However, as a threshold matter, Plaintiff twice waived the very rights it now seeks to enforce. First, Plaintiff waived its rights by failing to appear on Law Day thereby defaulting on the Contracts. Second, Plaintiff again waived any rights it may have to the down payment monies by failing to commence an action within 90 days of being defaulted by Defendants. Inexplicably, Plaintiff ignores both foregoing points and believes its desire to enforce its rights should be entertained notwithstanding well-established law and the Contracts' express terms.

Next, to avoid admitting that Plaintiff defaulted by failing to appear at the time of the essence Law Day, Plaintiff creates a non-existent *condition precedent* to Closing: arguing, incorrectly, that Plaintiff was to resolve all "title issues" *before* Law Day. However, despite continuously shifting between referring to the purported title issues as objections, defects, questions, violations, exceptions, substantial impediments, Plaintiff has stopped short of ever referring to them as incurable. As discussed below and in Defendant's Memorandum of Law in support of its Motion to Dismiss, Plaintiff overlooks decades of well settled law and concludes that closing would have been futile because Defendants have failed to address Plaintiff's alleged concerns prior to Law Day. Nevertheless, such an argument is only available if Plaintiff alleges that such alleged title issues are incurable, which it does not. Plainly, Plaintiff failed to appear on Law Day and therefore failed to tender performance for which Plaintiff was thereafter defaulted. Plaintiff now attempts to convince this Court to refrain from even reviewing Defendants' exhibits that squarely rebuff pleadings made by Plaintiff concerning those same "title issues." As discussed below, Plaintiff's failure to

Further, Plaintiff fails to distinctly represent how (i) Plaintiff was ready, willing, and able to purchase the Properties on both Law Day and/or presently, should specific performance

be ordered[1]; and (ii) Defendants were not ready, willing, and able to sell the Properties on Law

Day. Plaintiff cannot claim that Defendants were not ready, willing, and able to sell the Properties

on Law Day because Plaintiff never appeared on Law Day in the first place, and consequently

failed to tender performance and demand good title. Plaintiff has never claimed that the alleged

title issues were incurable prior to Law Day, nor has Plaintiff alleged that the issues were not

curable at the closing, which is customary way that these issues are typically addressed. Because

Plaintiff has not appeared at Law Day and failed to seek performance of the Contract, Plaintiff

cannot, under the express terms of the Contracts, default Defendants. Indeed Plaintiff has never

taken any steps to declare Defendants in defaults of the contracts. As such, Plaintiff cannot seek

specific performance or damages.

   Accordingly, as more fully discussed below, this Court must dismiss the Complaint

in its entirety.

---

[1] Plaintiff has claimed in its Memorandum of Law that it's prepared to close on the property utilizing financing from its investors. However, Plaintiff has not identified anywhere who these investors are. Indeed, at the U.S. Trustee meeting of creditors, Debtor/Plaintiff identified the persons in its schedules as lenders, not investors. Moreover, Debtor/Plaintiff stated therein that it is not owned by the same entity that owned it at the time the Contracts were entered into and subsequently breached by Plaintiff. Debtor/Plaintiff was sold to an individual for the purpose of commencing this adversary proceeding. Accordingly, the conclusory statement that Debtor can close on the properties with financing from its investors is insufficient to show that it is able to close should they be ordered specific performance. *Internet Homes, Inc. v. Vitulli*, 8 A.D.3d 438, 439, 778 N.Y.S.2d 534, 535 (2d Dep't 2004) ("Here, even assuming that the defendants improperly cancelled the contract, the plaintiff still bore the burden to show that it had the financial capacity to purchase the property. The plaintiff's unsubstantiated assertions that a line of credit could be secured or that a closely- related corporation would supply the funds and the conclusory allegation that it was ready, willing, and able to perform were insufficient to satisfy its burden."). Additionally, should Debtor/Plaintiff require additional debt to purchase the properties. specific performance is not intended to leave the Court in a supervisory role over a plaintiff's attempts post-judgment to consummate a transaction. *See, e.g Niagara Mohawk Power Corp. v Graver Tank & Mfg. Co.*, 470 F. Supp. 1308, 1326 (N.D.N.Y. 1979) (noting that "[c]ourts of equity are reluctant to grant specific performance in situations where such performance would require judicial supervision over a long period of time.")

## ARGUMENT

### A.    STANDARD OF REVIEW

Plaintiff declares that "[w]hile the Defendants acknowledge the familiar standard, they proceed to completely ignore it and to argue facts in dispute rather than addressing the legal sufficiency of what is actually pled in the Complaint." Plaintiff's Memorandum of Law in Opposition at Page 10. In other words, Plaintiff hopes to persuade this Court that Plaintiff's conclusory statements must be given every favorable inference.   However, where as here, Defendant have presented facts that disprove the very nature of Plaintiff's complaint, even if those conclussory allegations are given a favorable inference, Plaintiff still has failed to state a claim for relief.

It is axiomatic, that to survive a Rule 12(b)(6) motion, a complaint must allege plausible facts to show that each element of a cause of action is met. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that plaintiffs do not meet their pleading burden with "labels and conclusions" or a "formulaic recitation of a cause of action's elements."). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.; Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 785 (S.D.N.Y. 2008) (Karas, J.).

Under the standard set forth in *Twombly*, when a complaint fails to state "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a plaintiffs claim, the complaint should be dismissed. *Twombly*, 550 U.S. at 556. "Plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face." *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008) (Karas, J.) (*quoting Twombly*, 550 U.S. at 570). "If Plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed.'" *Id*. A pleading that contains

allegations "merely consistent with" the elements of the claims asserted "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 557. Thus, where the pleadings "do not permit the court to infer more than the mere possibility of misconduct," the claims must be dismissed. *Iqbal*, 129 S. Ct. at 1950.

To that end, Plaintiff challenges Defendants' use of documentary evidence, which refutes Plaintiff's claims, by attempting to misleading this Court into believing that *E. Materials Corp. v. Mitsubishi Plastics Composites Am. Inc*. stands for an automatic disregard of documentary evidence on the grounds that "it is outside the four corners of the complaint." Plaintiff's Memorandum of Law in Opposition at Page 7. It is respectfully submitted that this is not what *E. Materials Corp*. stands for. Instead, *E. Materials Corp.* holds that "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc*., 307 F. Supp. 3d 52, 57, 2018 WL 1634391 (E.D.N.Y. 2018); *quoting Giugliano v. FS2 Capital Partners, LLC,* 127 Fair Empl. Prac. Cas. (BNA) 1632, 99 Empl. Prac. Dec. P 45391, 2015 WL 5124796, at *7. Moreover, not only does the *E. Materials Corp*. Court hold that there is no automatic preclusion of material, but the Court provides five factors to be considered when deciding whether to accept the submission of any evidentiary material beyond the pleadings.[2] The annexed commercial lease, license agreement, and actual transcript of the

---

[2] As set forth in *E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, the five factors to be considered are:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the

predicate closing are imminently integral to Plaintiff's Complaint and must therefore be allowed to be part of the record and considered by this Court.

Accordingly, Plaintiff's argument that the Court should ignore Defendant's exhibits is not supported by the law and must be ignored by the Court.  Such an argument is clearly designed to mislead the Court to accept a non-existent procedural argument, and to ignore the fact that Plaintiff's Complaint must be dismissed.

## B.    PLAINTIFF MUST HAVE TENDERED PERFORMANCE AND DEMANDED GOOD TITLE IN ORDER TO STATE A CLAIM FOR SPECIFIC PERFORMANCE

Plaintiff never argued, either before Law Day, On Law Day, or in its Complaint that the alleged title defects were incurable, which would render the tender of performance and futile. It is only now, in an attempt to avoid dismissal, that Plaintiff is attempting to allude that the alleged title defects were incurable. It is respectfully submitted that such equivocation is wasteful of judicial resources and is concerningly disingenuous.

It is well established law "that a vendor with incurable title defects is automatically in default, whereas a vendor with curable title defects must be placed in default by a tender and demand, which was not done here." *Cohen v Kranz*, 12 N.Y.2d 242, 246, 238 N.Y.S.2d 928 (1963). Though Plaintiff attempts to distinguish the foregoing, along with *In re 1111 Myrtle Ave. Group*

---

Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Id.* Here, the first, second, and third factor are applicable to the case at bar. Plaintiff alleges facts that attempt to demonstrate Defendants' various defaults, which, allegedly include Defendants' refusal to grant access to the Subject Premises, Defendants' alleged post contract-of-sale letting of commercial space, and Plaintiff's Complaint consistently attempts to argue that Defendants were not ready, willing, and able to deliver insurable title on Law Day – a fact directly refuted by the Law Day Transcripts (the "Transcripts"). These three exhibits are – according to Plaintiff's opposition - integral, Plaintiff is aware of several of them (having been provided with the lease and the license agreement during the parties' relationship) and must have relied on them and for what they stand when framing its Complaint. *See also Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), vacated on other grounds, 547 U.S. 71, 126 S.Ct. 1503, 164 L.Ed. 2d 179 (2006); *Env't Servs. v. Recycle Green Servs.*, 7 F.Supp.3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (*quoting In re Merrill Lynch & Co.*, 273 F.Supp.2d 351, 356–57 (S.D.N.Y. 2003).

*LLC*, *Ilemar Corp. v Krochmal*, and *Sherman v. Real Source Charitie, Pesa v. Yoma Dev. Group, Inc.*[3] decisions by arguing that all of those actions were decided post-trial or on the facts, this is a distinction without a difference.  Regardless of when the outcome of those holdings occurred, the clear holding of these cases is that a purchaser, such as Plaintiff herein, must appear on the law day, and must tender performance and demand performance from the seller.  Plaintiff took none of these steps and therefore cannot now attempt to hold Defendant in default of the Contracts, demand specific performance, or seek any damages. Accordingly, there is no fact-finding necessary (as Plaintiff argues: "it remains to be seen after discovery and a summary judgment motion or trial whether Plaintiff or Defendants are right as to whether Defendants' termination of the contracts a refusal to close constitutes a default under the Agreements" Plaintiff's Memorandum of Law in Opposition at Page 19-20) for this Court to conduct. The question of curability is never raised, thereby leaving only the foregoing well-established principle of law requiring the dismissal of this action because a vendor with curable title defects must be placed in default by a tender and demand, which was not done here. *See id*. Moreover, because Law Day was *time of the essence*, then Plaintiff must have tendered performance. *See Donerail Corp. N.V. v. 405 Park LLC*, 100 A.D.3d 131, 137, 952 N.Y.S.2d 137 (1ˢᵗ Dep't 2012) ("when a party to a

---

[3] In addition to arguing that *Pesa* is inapplicable because it was decided post-trial on the facts, Plaintiff argues that *Pesa* stands for "non-repudiating buyers are required to show their readiness, willingness, and ability to perform … but they need not [sic.] tender performance." Plaintiff's Memorandum of Law in Opposition at Page 17 *quoting Pesa*. This is incorrect and completely taken out of context. *Pesa* expressly states: "the rule requiring non-repudiating buyers to show their readiness, willingness and ability to perform is supported by common sense." *Pesa v. Yoma Dev. Grp., Inc.*, 18 N.Y.3d 527, 532 (2012). The Plaintiff is taking "need not actually tender performance," literally rather acknowledging the rule means that if a seller is repudiating or is simply not there at closing, purchaser is not expected to tender cash to nobody and leave without a deed. It is logical that if a purchasing party has nobody to tender consideration, then the purchasing party is not expected to simply leave the consideration. Here however, the circumstances were contra-opposite: Defendants were present at closing, prepared to accept consideration in exchange for insurable title, but it was Plaintiff who did not appear. Moreover, because the closing was TOE and whatever title issues existed were not incurable, Plaintiff defaulted and is unable to allege that it was ready, willing, and able to tender performance.

real estate contract declares time to be of the essence in setting a closing date, each party must tender performance on that date, and a failure to perform constitutes a default.").

Even assuming *arguendo* that Plaintiff did allege the specific defaults which led to Plaintiff's decision to not appear at closing, then (i) the exhibits Plaintiff now seeks to exclude should certainly be allowed in by this Court; and (ii) all such alleged specific defaults are facially not incurable and Plaintiff's decision to use them as pretextual justifications for its default is misguided.

First, a copy of a license agreement between Defendants 1988 Morris Avenue LLC and 1974 Morris Avenue LLC and the Plaintiff must be included. This exhibit demonstrates that the Plaintiff was allowed access, to the respective properties to perform work on those properties, including flooring, paint scraping, kitchen renovation, and staircase repair and renovation – even though the foregoing are certainly not even close to incurable title defects. Second, a copy of a commercial lease between 700 Beck Street LLC and Chichi Therapeutic Services contradicts yet another alleged "title issue" must be included because it demonstrates that it was indeed entered into before any contract of sale. Third, and the most fundamental documents to this action, the Law Day Transcript of Defendants' testimony must be included. The Transcript demonstrates that the Defendants were ready, willing, and able to close on Law Day, providing insurable clear title as contemplated by the Contracts of Sale.

## C. PLAINTIFF MUST HAVE COMMENCED AN ACTION WITHIN 90 DAYS FROM DEFENDANTS' ALLEGED DEFAULT

In addition to waiving its ability to default Defendants as a result of Plaintiff's failure to tender performance and demand title, Plaintiff again waived its right to the return of the deposits which it seeks in its second cause of action.

Plaintiff attempts to argue that Paragraph 14 of the Contracts is not a contractual limitations period. The express language provides:

> Should the Purchasers not commence an action for the return of the down payment within NINETY (90) DAYS of written notice of default to the purchasers or their attorney, the escrow agent is authorized to deliver the down payment to the sellers and this shall not prohibit the escrow agent …"

Exhibit B, Page 23, Paragraph 14.

Despite the clear language which provides for the down payments to be delivered to Defendants and failure to commence an action waives Plaintiff's rights thereto, Plaintiff asserts that "Defendants essentially absconded with over $800,000.00 in deposits under the contract of sale without conveying the Properties to the Debtor's estate." Plaintiff's Opposition Memorandum of Law at Page 3. Surely it is not Plaintiff's contention that Defendants somehow defrauded Plaintiff, indeed, Plaintiff has not pled any allegations of fraud, conversion, theft or any other allegations that would lead to the defamatory allegation that Defendant "absconded" with any monies.  Indeed, the facts, as alleged in the Complaint show that rather than Defendant absconding with any monies, Plaintiff made the decision to forfeit the money, rather than proceed with purchasing the properties.

Instead, what occurred, as readily admitted by Plaintiff, is Defendants defaulted Plaintiff for Plaintiff's failure to perform its contractual obligations *vis-à-vis* tendering performance and demanding title, and in accordance with well establish law kept the down-payments. *See, e.g.*, *No. 1 Funding Ctr., Inc. v. H & G Operating Corp.*, 48 A.D.3d 908, 910–11, 853 N.Y.S.2d 178, 182 (3d Dep't 2008) (holding seller entitled "to retain all moneys it received from [purchaser] pursuant to the contract" where purchaser "submitted no documentation or other evidence establishing that it had the funds necessary to purchase the property on the date of the

closing."); *Goller Place Corp. v. Cacase*, 251 A.D.2d 287, 288, 672 N.Y.S.2d 923 (2d Dep't 1998) (holding purchaser failed to make prima facie showing of entitlement to specific performance where purchaser "submitted no documentation or other proof to substantiate his assertion that he had the funds necessary to purchase the property and thus, [was] unable to prove that he was ready, willing, and able to close the sale as a matter of law.")

Plaintiff's attempt to rephrase this provision as a limit on the Escrow Agent's liability is misplaced.  Clearly the plain unambiguous language of the provisions states that Plaintiff has 90 days to commence an action to seek return of the down payment monies.  Plaintiffs have failed to commence this action within the 90-day period, and here again, asks this Court to ignore the clear unambiguous contractual language of the Contract, as well as the law of the State of New York in order to save Plaintiff from its own actions.

## D.    PLAINTIFF DOES NOT SUFFICIENTLY STATE WHICH CONTRACTUAL PROVISIONS WERE BREACHED

Here, because Plaintiff failed to identify the specific contractual provisions that Defendants have allegedly breached, Plaintiff has failed to state a claim for breach of contract under New York law, and the First and Second causes of action must be dismissed pursuant to Rule 12(b)(6).

In its opposition, Plaintiff argues that its Complaint's Paragraph 16, 21, 22, 23, and 35 identify the specific contractual provisions that Defendants have allegedly breached.  Directly replying to Plaintiff's list on Page 15 of its Memorandum, (i) Paragraph 16 of the Complaint does not in any manner state that any of the listed sections of the Contracts were breached, it simply lists obligations; (ii) Paragraph 21 of the Complaint circularly and vaguely states that "numerous items … need to be addressed" – what those items are and the corresponding contractual provisions which obligate Defendants to address these items are not plead in a manner that would state a claim

10

for specific performance or breach of contrac; (iii) Paragraph 22 of the Complaint simply states that Defendants "were required to address questions … of a purported lease" – again, not only is this completely not an incurable "title issue" which would justify Plaintiff's failure to appear at Law Day, but also there is no reference to a corresponding contractual provision that was allegedly breached, and further, this is addressed and completely proven incorrect by Exhibit D to Defendant's moving papers; (iv) Paragraph 23 discusses "water and electrical damage, mold, and roofing issues," but does not discuss corresponding contractual provisions were allegedly breached and further belied by the fact that contracts for sale specifically provide that the condition of the property is being sold "AS IS"; and finally (v) Paragraph 35 simply states "for the reasons detailed above" – which, in turn, have not been detailed at all. Taken together, not only is it abundantly clear that none of the foregoing "issues" or "items" or "questions" are incurable defects that justify Plaintiff's failure to appear on Law Day, but also that Plaintiff never mechanically alleged actions by Defendants, then a term of the Contracts, and then how Defendants actions breached those terms.

Therefore, as this Court decided in *E. Materials Corp*, Plaintiff's First and Second Cause of Action must be dismissed because, and notwithstanding vague references in the complaint, there is no specific connection between any of the contracts and the Plaintiff's allegations against the Defendant, thereby rendering the allegations insufficient to state a claim for breach of contract.

## E.     DEFENDANTS HAVE NOT REPUDIATED THE CONTRACTS

Plaintiff attempts to argue that Defendants cannot hide behind an alleged "arranged … sham closing." However, Plaintiff ignores the fact that the time of the essence closing was set not by Defendants, but by the parties contracts' addendums: "Seller and Purchaser agree to set a Time is of the Essence closing date of December 18, 2018 ("TOE Closing Date")." Plaintiff's

Exhibit C. As previously stated, it is well established that "when a party to a real estate contract declares time to be of the essence in setting a closing date, each party must tender performance on that date, and a failure too perform constitutes a default." *Donerail Corp. N.V.*, 100 A.D.3d at 137, 952 N.Y.S.2d at 142. Though Plaintiff argues that performance on Law Day would have been futile, Plaintiff continues to fail to represent that any of the "title issues" were incurable and therefore could not have been addressed at the closing. Therefore, it is not Defendants who repudiated, but Plaintiff who simply failed to appear on Law Day and, as a result, defaulted on the Contracts, thereby waiving any standing to default Defendants and certainly to commence this action against them.

Moreover, the parties' contracts also specifically provided that "if any objection or violation appearing on said examination cannot be cleared, removed or remedied by Seller before the time fixed for closing of title or any adjournments thereof … Seller shall be entitled to a reasonable adjournment for the purpose of clearing, removing, or remedying such objections or violations … Purchase may also take title subject to such violations without any abatement to the purchase price, and Seller shall be released from any and all liability in connection with said violation." Defendants' Exhibit B, Paragraph 7 of each Contracts' Riders. Here, Defendants were ready in time for the TOE Law Day, but it was Plaintiff who was not. In fact the contracts expressly provide that

> [i]f at Closing there are other liens or encumbrances that seller is obligated to pay or discharge, seller may use any portion of the cash balance of the purchase price to discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments … [a]s an alternative Seller may deposit sufficient moneys with the title insurance ….

Defendants' Exhibit B, Paragraph 20 of each Contract.

In other words, the parties were specifically prepared for addressing and title issues on Law Day and specifically provided for this contingency in the Contracts. Yet, despite this clear unambiguous contractual provision, Plaintiff failed to appear on Law Day and now seeks this Court's assistance in undoing its own decision.

In fact, as Defendants discuss in their Default Letters to Plaintiff, "title clearance documents were sent to Purchaser's title company prior to the closing … [and] … [a]t the closing, [Defendants] evidenced [Defendants'] ability to transfer title in accordance with the Contract[s], which included, but not limited to, the proper authorizations, mortgage payoff letters, bargain and sale deed, and Acris Documents." Defendants' Exhibit I. Since Plaintiff failed to appear on this TOE Law Day, not only is Plaintiff unable to default Defendants – as a matter of law, but also as a matter of fact, because Plaintiff was simply not present to know whether Defendants were ready, willing, and able to tender their performance.

## <u>CONCLUSION</u>

Wherefore, for the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss and award such other and further relief as the Court deems just proper and equitable.

Dated:   New York, New York
         July 24, 2018

                          **GOLDSTEIN HALL PLLC**


                          /S/ Brian J. Markowitz
               By:        **BRIAN J. MARKOWITZ, ESQ.**

                          **DANIEL GOLDENBERG, ESQ.**
                          Attorneys for Defendants
                          *1988 MORRIS AVENUE LLC, 1974*
                          *MORRIS AVENUE LLC, 700 BECK*
                          *STREET LLC, 1143 FOREST AVENUE LLC*
                          *and 1821 TOPPING AVENUE LLC*
                          80 Broad Street, Suite 303
                          New York, New York 10004
                          (646) 768-4105


TO:    **ROBINSON BROG LEINWAND GREENE**
       **GENOVESE & GLUCK P.C.**
       Attorneys for Plaintiff-Debtor
       *FMTB BH LLC*
       Attn: Lawrence S. Hirsh, Esq.
       875 Third Avenue, 9th Floor
       New York, New York 10022