GOLDSTEIN HALL PLLC
Attorneys for Defendants
80 Broad Street, Suite 303
New York, New York 10004
Tel: (646) 768-4127
By:    Brian J. Markowitz (BM-9640)
       bmarkowitz@goldsteinhall.com
       Daniel Goldenberg (DG-1337)
       dgoldenberg@goldsteinhall.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISCTRICT OF NEW YORK

----------------------------------------------------------------- X
In re:                                              :    **Chapter 11**
                                                    :
FMTB BH LLC,                                        :    Case No. 18-42228 (CEC)
                                    Debtor.         :
----------------------------------------------------------------- :    Adv. Pro. No. 18-01052 (CEC)
FMTB BH LLC,                                        :
                                    Plaintiff,      :
            -against-                               :
                                                    :
1988 MORRIS AVENUE LLC, 1974 MORRIS                 :
AVENUE LLC, 700 BECK STREET LLC, 1143               :
FOREST AVENUE LLC, and 1821 TOPPING                 :
AVENUE LLC                                          :
                                    Defendants.     :
----------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR AN ORDER
PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 56 AS MADE APPLICABLE HEREIN
BY FEDERAL RULE OF BANKRUPTCY
PROCEDURE 7056 DISMISSING PLAINTIFF'S
ADVERSARY PROCEEDING AND GRANTING
DEFENDANT'S SUMMARY JUDGMENT_____**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

POINT I - PLAINTIFF'S FAILURE TO APPEAR AT THE TIME OF THE ESSENCE CLOSING
AND TENDER FULL PERFORAMNCE IS FATAL TO ITS CALIMS FOR SPECIFIC
PERFORMANCE AND DAMAGES HEREIN ........................................................................... 2

   A.  New York Law is Clear That Full Tender is Required on a Time of the Essence Closing
      Before a Party can Seek Specific Performance ...................................................... 2

        i.   *The Closing Rejection Letters Do Not Excuse Plaintiff's Failure to Appear at the*
           *Closing because they do not allege any incurable title defects* ............................. 5

   B.  The Post-Hoc Allegations Contained in the Pleadings Should not be Considered, but if they
      are they Do Not Excuse Plaintiff's Failure to Appear at the Closing Because they do not
      Allege any Incurable Title Defects .................................................................... 11

        i.   *This Court should not consider evidence, testimony, or pleadings regarding*
           *alleged incurable title defects that were not previously identified in Plaintiff's*
           *Closing Rejection Letters.* ........................................................................... 11

        ii.  *The Post-Hoc allegations contained in the pleadings Do Not Excuse Plaintiff's*
           *Failure to Appear at the Closing because they do not allege any incurable title*
           *defects* ...................................................................................................... 13

   C.  A Claim for the Return of the Downpayments or Other Damages is Unavailable .............. 19

CONCLUSION .................................................................................................................... 20

## **PRELIMINARY STATEMENT**

Defendants 1988 Morris Ave LLC (incorrectly sued herein as 1988 Morris Avenue LLC), 1974 Morris Ave LLC (incorrectly sued herein as 1974 Morris Avenue LLC), 700 Beck Street LLC, 1143 Forest Ave LLC (incorrectly sued herein as 1143 Forest Avenue LLC) and 1821 Topping Ave LLC (incorrectly sued herein as 1821 Topping Avenue LLC), (collectively the "Defendants"), by their attorneys, Goldstein Hall PLLC, respectfully submit this memorandum of law in support of Defendants' motion for an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, for summary judgment on the Debtor's claims seeking specific performance and related relief, and for such other relief as the Court deems just, proper and equitable.

Plaintiff has not established, and indeed cannot establish, a factual or legal basis for seeking specific performance because Plaintiff itself did not tender complete performance at the December 18, 2017 time of essence closing and does not have a legally cognizable excuse for its failure to tender performance. Similarly, for the very same reasons, Plaintiff may not seek damages against Defendants as Plaintiff – not Defendant – breached the Contracts

According to well recognized law in this Circuit, the only way Plaintiff could have been excused from appearing at the time of essence ("TOE") closing (the "Closing") is if Plaintiff rejected the closing date by informing seller of incurable title defects. However, Plaintiff's vain attempt to reject the closing (on the day of the Closing) and fatally never inform Defendants of any incurable title defects (and could not because there were none). Instead, Plaintiff's stated

alleged grounds for attempting to reject the Closing do not state any incurable title defects, and as such cannot excuse Plaintiff's failure to appear at the closing.

## ARGUMENT

## POINT I

**PLAINTIFF'S FAILURE TO APPEAR AT THE TIME OF THE ESSENCE CLOSING AND TENDER FULL PERFORMANCE IS FATAL TO ITS CLAIMS FOR SPECIFIC PERFORMANCE AND DAMAGES HEREIN**

**A.    New York Law is Clear That Full Tender is Required on a Time of the Essence Closing Before a Party can Seek Specific Performance**

New York law is well established concerning time of essence sales of real property and as to what is required of a purchaser who later seeks specific performance. Plaintiff's first and second cause of action are respectively titled: "Breach of Contract/Specific Performance" and "Breach of Contract/Damages." The second Cause of Action is pleaded in the alternative to the first, and, accordingly, the allegations clearly arise from the exact same foundation. *See* Complaint.

The law is clear in New York that "a purchaser who seeks specific performance of a contract for the sale of real property must demonstrate that he or she was ready, willing, and able to perform the contract, <u>regardless</u> of any anticipatory breach by a seller." *Fridman v. Kucher*, 34 A.D.3d 726, 727, 826 N.Y.S.2d 104 (2d Dep't. 2006) (emphasis added). *See also Zeitoune v. Cohen*, 66 A.D.3d 889, 891, 887 N.Y.S.2d 253 (2d Dep't 2009); *Dairo v. Rockaway Blvd. Props. LLC*, 44 A.D.3d 602, 602, 843 N.Y.S.2d 642 (2d Dep't 2007); *Singh v. Gopaul*, 26 A.D.3d 370, 370, 809 N.Y.S.2d 549 (2d Dep't 2006); *Madison Equities, LLC v. MZ Mgmt. Corp.*, 17 A.D.3d 639, 640, 794 N.Y.S.2d 404 (2d Dep't 2005*); Internet Homes, Inc. v. Vitulli*, 8 A.D.3d 438, 439, 778 N.Y.S.2d 534 (2d Dep't 2004); *City Ownership, Inc. v. Giambrone*, 5 A.D.3d 529, 529, 772

2

N.Y.S.2d 870  (2d Dep't 2004); *Tsabari v. Have*, 13 A.D.3d 360, 360, 786 N.Y.S.2d 102 (2d Dep't 2004); *Ferrone v. Tupper*, 304 A.D.2d 524, 525,  760 N.Y.S.2d 504 (2d Dep't 2003); *Goller Place Corp. v. Cacase*, 251 A.D.2d 287, 288, 672 N.Y.S.2d 923  (2d Dep't 1998); *3M Holding Corp. v. Wagner*, 166 A.D.2d 580, 581-82, 560 N.Y.S.2d 865 (2d Dep't 1990); *Zev v. Merman*, 134 A.D.2d 555, 557, 521 N.Y.S.2d 455 (2d Dep't 1987), aff'd, 73 N.Y.2d 781 (1988); *Huntington Mining Holdings, Inc. v. Cottontail Plaza, Inc*., 96 A.D.2d 526, 526-27, 465 N.Y.S.2d 40  (2d Dep't 1983), *aff'd*, 60 N.Y.2d 997 (1983).

However, where, as here, the purchaser failed to appear at the closing, without an express mutual agreement to adjourn the time of the essence closing, New York law is equally clear that the purchaser is deemed to have failed to demonstrate that it was, in fact, ready, willing, and able to close. In fact, as twice held earlier this year by the New York Appellate Division, Second Department, "[i]n this regard, a seller may demonstrate prima facie entitlement to judgment as a matter of law by presenting evidence that a buyer failed to appear at a time-of-the-essence closing." *Goetz v. Trinidad*, 68 A.D.3d 688, 689, 91 N.Y.S.3d 513 (2d Dep't 2019); *Second Ave. Grp. LLC v. Capdell LLC*, 168 A.D.3d 415, 88 N.Y.S.3d 878, 879 (2d Dep't. 2019) ("Plaintiff defaulted, as it failed to appear at the closing"). *See also Guo v. Azzab*, 162 A.D.3d 754, 755, 80 N.Y.S.3d 66, 68 (2d Dep't 2018) ("a seller may demonstrate prima facie entitlement to judgment as a matter of law by presenting evidence that a buyer failed to appear at a time-of-the-essence closing"); *184 Joralemon, LLC v. Brklyn Hts Condos*, LLC, 117 A.D.3d 699 , 985 N.Y.S.2d 588, 591 (2d Dep't 2014); *Richmond v. Miele*, 30 A.D.3d 575, 576 (2d Dep't 2006) ("When the plaintiff failed to appear at either the originally scheduled closing … he was in default under the contract … consequently, lost his right to seek specific performance or damages"); *Milad v. Marcisak*, 307 A.D.2d 281, 282, 762 N.Y.S.2d 282 (2d Dep't 2003) ("Here, the purchasers defaulted on their

contractual obligations by failing to appear at the closing on the scheduled date of January 15, 2002, pursuant to the stipulation dated November 7, 2001, and the contract of sale"); *Zelmanovitch v. Ramos*, 299 A.D.2d 353, 354, 750 N.Y.S.2d 310 (2d Dep't 2002) ("However, the plaintiff failed to attend the closing, despite claiming that he was ready, willing, and able to perform the contract on the law day. Therefore, he was not entitled to seek specific performance, regardless of whether the defendants were unable to convey the property in accordance with contract specifications.")

The only recognized exception to the foregoing clear and unambiguous red-line rule is "[t]ender of performance by the purchaser is excused <u>only</u> if the title defect is not curable, for in such a case it would serve no purpose to require the purchaser to go through the futile motions of tendering performance" *Ilemar Corp. v. Krochmal,* 44 N.Y.2d 702, 405 N.Y.S.2d 444 (1978) (emphasis added). In other words, "a vendor with incurable title defects is automatically in default, whereas a vendor with curable title defects <u>must be placed in default by a tender and demand</u>." *Cohen v. Kranz*, 12 N.Y.2d 242, 246, 238 N.Y.S.2d 928 (1963) (emphasis added). The New York Court of Appeals further clarified "incurable" "to mean not within the vendor's power to remedy within a reasonable time." *Cohen,* 12 N.Y.2d at 246, 238 N.Y.S.2d at 928 (1963). In other words, a default may be cured even after the closing date. As the Cohen Court stated "the vendor in such a case is entitled to a reasonable time beyond law day to make his title good." *See also Ballen v. Potter*, 251 N.Y. 224, 167 N.E. 424 (1929).

Applying the foregoing law to this case, it is abundantly clear that Defendants' must be granted summary judgment because Plaintiff is unable to satisfy the manifestly indisputable threshold element of specific performance: demonstrating that it was ready, willing, and able to perform the contracts, regardless of any anticipatory breach by the Defendants. It is undisputed that Plaintiff failed to appear at a time of essence closing thereby failing to tender performance

4

and demand title, and failed to justify its failure in its Closing Rejection Letters and in its *post-hoc* pleadings, because none of the alleged "title defects" justify Plaintiff's failure to appear at the Closing, as required by well-established law. Indeed, Plaintiff's alleged defaults do not consist of any title defects, let alone any incurable title defects. *See* Exhibit V, Closing Rejection Letters; Exhibit W, Closing Transcripts; Complaint.

Accordingly, because Plaintiff cannot make a sufficient showing of an essential element of its case, Defendants are entitled to summary judgment as a matter of law. *See Tenay v. Culinary Teachers Ass'n*, 281 Fed. Appx. 11, 13 (2d Cir. 2008) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."); *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) ("In Celotex, the Supreme Court made it clear that in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim. Thus, the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions.")

     i.     *The Closing Rejection Letters Do Not Excuse Plaintiff's Failure to Appear at the Closing because they do not allege any incurable title defects*

As set forth in Defendants' Rule 56.1 Statement, on the day of the scheduled closing, Plaintiff's transactional attorney prepared three letters purporting to reject the time of the essence closing date. *See* Exhibit V, Closing Rejection Letters. As discussed herein, the reasons set forth in these letters do not allege any title defects, let alone any incurable title defects. Instead, the letters allege only dubiously factual issues which are legally insufficient to reject the time of

essence Closing or excuse Plaintiff's failure to tender at the Law date, regardless of their validity, which are false.

Additionally, it is important to note, that each Defendant in this action is selling a separate parcel; none of the five contracts for sale contain cross-default provisions. *See* Exhibit A, B, C, D, and E, Contracts; Exhibit I, Addendums.  As such, even assuming *arguendo* that any incurable title defect existed on a property, such title defect would not prevent Plaintiff from closing on the remaining properties. Therefore, an alleged incurable title defect on one property is legally insufficient to not appear at the closing for the four remaining properties.

By way of example, Plaintiff's rejection for the closing of 770 Beck Street sets forth the following reasons:

1. The notice provided in your letter is insufficient as Riverside Abstract, the title company has advised us that no one from your offices have been in contact with them regarding clearing title.

2. Unless I have confirmation from the title company that you are ready, willing, and able to deliver clear title at Closing, this TOE is premature and being untimely, is hereby rejected.

3. Further, the lease presented to us for the 1st floor of this Premises was fraudulent and thus misrepresentation of a material fact, which was one of the base inducement for entering into such a contract of sale.

Exhibit V, Closing Rejection Letters at 770 Beck Street.

On its face, **none** of the foregoing reasons are alleged title defects, let alone "incurable title defects." Instead the foregoing points are factual allegations which are, in fact, belied by documentary evidence.

While not necessary to go through the alleged defaults because they are not title defects, going through each shows their obvious pretextual nature. As to the first point, e-mails demonstrate that Mr. Hsu was in contact with Riverside Abstract – illustrating Mr. Hsu specifically "reaching out to request a closer for our closing on Monday, Dec. 18" and then following up again to request whether there was anything outstanding. Tellingly, Riverside Abstract was never able to produce a response to Mr. Hsu' requests. *See* Exhibit L, M, N, and T; Deposition of Riverside Abstract's General Counsel, May 9, 2019 (the "Miller Depo.") at pages 21, Line 23 through Page 22, Line 18.. In fact, as discussed below, the evidence showed that Plaintiff failed to confirm the Closing, had issues securing a lender despite no-finance contingency, and only secured financing a week after the closing date and only after Plaintiff was defaulted under the Contract. Exhibit U ("the bank the initial lender is still not provided a commitment, we are seeking to go ahead with a hard money lender"). The first two points are therefore not only false, but do not even come close to satisfying the "incurable title defect" exception to justify Plaintiff's failure to appear at the Closing; it is undisputed that failure to communicate with a title company is not an incurable title defect.

Moreover, as testified to by the title company, in response to Plaintiff's questions

> Q – And was there a closing then?
>
> A – No.
>
> Q – And do you know why not?
>
> A – No.
>
> Q – Did your company appear at a purported closing on a closing date?
>
> A – I don't think so.
>
> Q – And do you know why?
>
> A – I know that we got an email requesting – saying that there was going to be a closing, and we sent an email out to the other side and – asking, you know, is this truly happening, because what – that

> what we'll do on a typical basis, if one side tells you its closing,
> we'll confirm with the other side. And I don't believe we got clarity
> from the other side that we should be showing up.

*Miller Depo.* at pages 21, Line 23 through Page 22, Line 18. In other words, the first two alleged

reasons for rejecting the closing are clearly pretextual and have nothing to do with title and are

completely baseless because the title company <u>does not</u> send confirmation of readiness,

willingness, and ability to sell – it just appears at the closing when asked. However, here, due to

Plaintiff's own inaction and inability, Plaintiff never gave "clarity" so the title company did not

attend the closing. Again, even if completely construed in a light most favorable to Plaintiff's

interests, these two points have nothing to do with the "incurable title defect" exception to justify

Plaintiff's failure to appear at the Closing.

Most illustrative are Plaintiff's own e-mails that demonstrate the opposite; Plaintiff was

still in the process of securing financing on the Friday, before the Monday Closing. *See* Exhibit T,

Plaintiff's Lender E-mails. As Plaintiff's counsel wrote to its own title company, "the initial lender

is still not provided a commitment" and that, instead, Plaintiff "may be closing … with a hard

money lender last minute …." *Id*. It was not until December 21, 2017 (several days after the

Closing, and after Defendants placed Plaintiff in default of the Contracts) that Plaintiff informed

the title company that it had "a new lender <u>now</u>." *Id* (emphasis added). Crucially, it is this

additional reason that – in parallel, besides Plaintiff's failure to appear at the Closing – completely

precludes Plaintiff from demonstrating that it was ready, willing, and able to perform close at the

Closing.

Here, Plaintiff's own email demonstrates that it did not have a lender to finance its purchase

until <u>after</u> Closing. This does not even take into consideration the important fact that none of the

Contracts included a financing contingency but were all cash. *See* Exhibit A, B, C, D, and E, the

Contracts at ¶8. Reigler Depo. Page 104, Line 22-25. In other words, not having a lender is a risk Plaintiff undertook and Defendants' had no obligation to provide Plaintiff with any additional time – especially considering this was the third rescheduled TOE closing sale. *See* Exhibit F, First TOE Letters; Exhibit G, Second TOE Letters; and Exhibit J, Hsu TOE Letters.

With respect to the third point raised in this closing rejection letter, issues regarding the lease for a unit at the premises is neither an alleged incurable title defect because it does not affect title, nor is it a truthful allegation because no evidence exists to support the fact that the lease was fraudulent whatsoever. Not only was there never any discussion as to the validity of this lease, it appears to have been raised – for the first time on December 11, 2017 (the week before scheduled Closing) – as a pretext to delay or avoid the Closing. Notwithstanding, even if the allegation was true, this is not an incurable title defect, as a matter of law. *See* Exhibit S, Lease; Pearson Depo. at Pages *generally* 15-19. Notwithstanding, it is undisputed that a commercial lease is not an incurable title defect whatsoever and does not excuse Plaintiff from failing to appear at the Closing.

In sum, the Closing Rejection Letter for 700 Beck is legally meaningless. It does not place Defendants into default, lists no incurable title defects, and was e-mailed to Defendants' counsel merely five minutes prior to the scheduled Closing. Accordingly, pursuant to well established law, Plaintiff is absolutely precluded from seeking specific performance as to this contract because they neither defaulted Plaintiff nor did they tender performance by failing to appear at the Closing. Furthermore, since there is no cross-default provision in the contract, Plaintiff's rejection letters for the remaining properties (even if legally sufficient, which they are not) cannot be used as a substitute or a complement.

Plaintiff's rejection for the closing of 1988 Morris Avenue, sets forth the same first two reasons as Plaintiff's rejection of 770 Beck Street and adds the following third reason:

> After entering into such a contract, the contract vendee discovered
> that there was substantial damage to the Premises which if not
> repaired would incur further deterioration and damages to the
> Premises. Such damages to the Premises left the Premises in a
> condition that were in no way similar to what was represented to the
> Contract vendee at the time of entering into such contract of sale.
> Despite such substantial damage to the Premises including structural
> damages this has not been addressed by your client.

Exhibit V, Closing Rejection Letters at 1988 Morris Avenue.

This reason – much like all the others – is not an incurable title defect because, at worst, implicit in the allegation is that the alleged damage can be "addressed," meaning it is in fact a curable condition. Further, this allegation is belied by the fact that this contract, like the other contracts for each property, contained an as-is clause. Moreover, the issues of this property's condition was addressed pre-closing by the parties. See Exhibit H, License Agreement and Exhibit I, Addendums. On October 17th, 2019, the parties entered into a license agreement wherein Plaintiff was permitted to address these pre-existing issues and the license agreement was further contemplated by and incorporated into the Addendums. *Id*. As such, Plaintiff was well aware of the alleged damages and took steps to address them. Accordingly, Plaintiff cannot cite the alleged damages as a reason to not appear at the Closing.

Further, Plaintiff's own testimony reflects that, in accordance with the license agreement, most – if not all – repairs were completed; "he didn't finish the job completely because he still needed to finish some stuff up, but the bulk of it was done." Reigler Depo. at page 119, Lines 4-6.

Stated differently, this third reason was false and cannot be a reason – let alone an incurable title defect – that would justify Plaintiff's failure to appear at the Closing.

Plaintiff's rejection for the closing of 1974 Morris Avenue, 1821 Toping Avenue, and 1143 Forrest Avenue sets forth the same first two reasons as Plaintiff's rejection of 770 Beck Street and

1988 Morris Avenue, with no additional reasons. *See* Exhibit R, Closing Rejection Letters 1974

Morris Avenue, 1821 Toping Avenue, and 1143 Forrest Avenue Rejection. Since neither are true

nor even allege incurable title defects, this Closing Rejection Letter is legally meaningless as well.

It does not place Defendants into default and lists no incurable title defects.

Accordingly, pursuant to well established law, Plaintiff is absolutely precluded from

seeking specific performance as to this contract because they neither defaulted Plaintiff nor did

they tender performance by failing to appear at the Closing. Furthermore, since there is no cross-

default provision in the contract, no other rejection letters (even if legally sufficient) can be used

as a substitute or a complement.

**B.      The Post-Hoc allegations contained in the pleadings Should not be considered, but if
         they are they Do Not Excuse Plaintiff's Failure to Appear at the Closing because they
         do not allege any incurable title defects**

*i.      This Court should not consider evidence, testimony, or pleadings regarding
         alleged incurable title defects that were not previously identified in Plaintiff's
         Closing Rejection Letters.*

As an initial matter, Plaintiff defined the scope of the alleged defects which it may attempt

to proceed on in this action when it sent Defendants the Closing Rejection Letters. *See* Exhibit R,

Closing Rejection Letters. Those letters asserted specific grounds for rejecting the time of the

essence closing and attempted to justify Plaintiff's failure to appear at the Closing. Settled New

York and Federal law limits Plaintiff's claims to those specific grounds, as Plaintiff has chosen its

justifications. Plaintiff cannot, through litigation, expand its reasoning to justify its failure to

appear at the time of the essence closing. Put otherwise, Plaintiff cannot now allege new defects

in order to justify Plaintiff's failure to appear and attempt to shoehorn its theory of law into the

one narrow exception that would otherwise excuse a purchaser from appearing at a time of essence

closing. Yet, this is precisely what Plaintiff seeks to do.

11

Having failed to assert any valid grounds to reject title and to justify its failure to appear at the Closing in the Closing Rejection Letters, Plaintiff's Complaint attempts to expand the scope of the Closing Rejection Letters to add unspecified alleged title defects, which will be shown to be fruitless anyway. This is improper and must not be permitted by the Court. Plaintiff must be barred from expanding its Closing Rejection Letters and presenting testimony or evidence regarding alleged incurable title defects not set forth in its Closing Rejection Letters.

As stated by the Second Circuit, nearly 70 years ago:

> As Justice Swayne said long ago, "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." Ohio Mississippi Ry. Co. v. McCarthy, 96 U.S. 258, 267, 268, 24 L.Ed. 693.

*Rode & Brand v. Kamm Games, Inc.*, 181 F.2d 584, 587 (2d Cir. 1950). This doctrine has long been part of New York contract law, as the New York Court of Appeals indicated in *Littlejohn v. Shaw*, 159 N.Y. 188, 191, 53 N.E. 810, 811 (1899):

> The principle is plain, and needs no argument in support of it, that if a particular objection is taken to the performance and the party is silent as to all others, they are deemed to be waived. This waiver of all other objections is not only justly inferable, generally; but is especially so, when, as under the circumstances present in this case, the deliberateness with which the objections are stated leaves it to be implied that there has been a consideration of the matter of the acceptance of the goods and a result reached upon particular grounds.

This doctrine is particularly applicable in the present case because the Closing Rejection Letters were prepared by counsel and carefully itemized Plaintiff's reasons for rejecting the TOE closing – especially considering how closely tailored they are to the last-minute issues Plaintiff's counsel

raised via e-mail on December 11th. *See* Exhibit N and U, Closing Rejection Letters. As in *Littlejohn*, the deliberateness with which Plaintiff's letters were drafted demonstrates that Plaintiff and its counsel carefully considered whether to attend the Closing and demand title and concluded that the reasons they set forth were both truthful and outweighed the potential of Defendants actually being ready, willing, and able to close. Plaintiff must not be allowed to expand the alleged reasons set forth in the Closing Rejection Letters to include other incurable title defects. This Court should follow well established law and consider only the reasons set forth in Plaintiff's Closing Rejection Letters as justification for Plaintiff's failure to appear at Closing.

     ii.     *The Post-Hoc allegations contained in the pleadings Do Not Excuse Plaintiff's Failure to Appear at the Closing because they do not allege any incurable title defects*

If the Court were to consider Plaintiff's additional allegations contained in Plaintiff's pleadings, in addition to the Closing Rejection Letters, which it should not, the Court will see that Plaintiff is nonetheless unable to articulate a single incurable title defect would have excused Plaintiff's appearance at the Closing.

At the outset, after alleging various supposed defects (without noting a single time that any of them were incurable) Plaintiff concludes:

> Purchaser's attorney sent three letters dated December 15, 2017[1] to the Sellers' attorney rejecting the attorney's Sellers' purported TOE letter of December 11, 2017 and his attempt to schedule the closing for each of the properties. **The Purchaser's attorney's letters identified the following issues requiring resolution before closing could occur:**

---

[1] Though Plaintiff artfully writes the letters were dated December 15th, it is undisputed that the letters were sent on December 18th via e-mail. Dating the letters in an effort to show earlier notice is misleading. *See* Exhibit R, Closing Rejection Letters

Complaint at ¶ 27 (emphasis added). Even though Plaintiff writes several paragraphs of allegations concerning various alleged – but curable – matters, the Complaint itself <u>admits</u> that the Closing Rejection Letters contained "issues requiring resolution before closing could occur." Meaning, ultimately, <u>Plaintiff concedes that the Closing Rejection Letters are the *raison d'etre* of Plaintiff's failure to appear and, as discussed, the Closing Rejection Letters contain zero references to any incurable title defects</u>.

As discussed, up until Plaintiff lays bare its Closing Rejection Letters as its reason to not appear at the Closing to tender and demand, Plaintiff makes the following allegations, not containing a single incurable title defect:

> The Sellers were unable to deliver insurable title to the Plaintiff on the purported TOE date as required under the Agreements as they had failed to clear various title defects and building violations on each of the properties and failed to grant Plaintiff reasonable access to one of the properties to inspect post-contract date damage that had occurred. Plaintiff's attorney so advised the Sellers prior to the purported TOE date and rejected the closing date, but the Sellers nevertheless proceeded without the Plaintiff, and without the Plaintiff's title insurance company, with a sham closing on that date.

Complaint at ¶ 1. This allegation contains no references to a single incurable title defect. First, as discussed, the title company's testimony reveals no statement regarding insurability or Defendants' readiness, willingness, and ability to close. The title company did not appear because Plaintiff's Counsel failed to confirm the closing and, as discussed, Plaintiff's own e-mails demonstrate that Plaintiff did not have financing until the following week. *See* Exhibit U ("the bank the initial lender is still not provided a commitment, we are seeking to go ahead with a hard money lender"); *Miller Depo.* at pages 21-22.

Second, alleging "clear various title defects and building violations on each of the properties" without more detail, is simply inadequate or instructive. Indeed, during discovery Plaintiff provided no proof of any building violations which impaired title of any of the five properties. Nevertheless, Plaintiff's allegation that Defendants "failed to clear" implies that these unspecified building violations were indeed possible to "clear." However, when asked about violations by the Plaintiff's counsel, Riverside's General Counsel, Ms. Miller state that these were not title issues, testifying as follows:

> Q – If you have a violation for a regular building, the sidewalk has a crack, and the city, you know, issued a violation for the crack that has to be fixed, so generally it could be fixed. You could pay for it, you might have to get a permit, you may not have to get a permit. what about that kind of process with respect to a violation which affects a landmark designated building; is it different?
>
> A – I have no idea.
>
> Q – Okay.
>
> A – It's nothing that we dabble in because its not a title issue.

Miller Depo. at Page 18, Line 21 through Page 19, Line 14. This response fundamentally undermines Plaintiff's allegation that a "building violation" is a title defect whatsoever, especially the fact that it is not an incurable title defect.

Further, with respect to alleged damages to the properties, Plaintiff's Rule 30(b)(6) witness, Mr. Joseph Reigler, Plaintiff's former member, testified as follows:

> Q – Was the work completed under the license agreement?
>
> A – He didn't finish the job completely because he still needed to finish some stuff up, but the bulk of it was done.
>
> Q – What work was not completed?
>
> A – I don't remember technical. Here and there – I don't remember. I can't remember. Toilet.
>
> Q – Was the roof work completed?

A – Yes, that was the first thing. The first thing we did was the roof. We had to repair the entire roof. It was messed up completely. Ripped open like a gaping hole right above the lobby,

Q – Do you remember when that work was completed?

A – I don't remember what time frame. The first thing after the licensing agreement, the first focus was the roof. That was A, B, C.

Q – Do you know when the work started?

A – No.

Q – Did it start on or around October 17 when the licensing agreement was dated?

A – I can't answer a date. Common sense, yes. FMTB, everybody on this side was very hands-on. We moved. We didn't schlep around.

Q – who was on your side that you are about there?

A – FMTB, the people that did this agreement. They were hands on everything.

Reigler Depo. at Page 119, Line 2 through Page 120, Line 14.

In sum, the allegations contained in this paragraph are false, misleading, and even if taken with complete deference to the Plaintiff do not constitute a single incurable title defect which would excuse Plaintiff from appearing at the Closing to tender performance and demand title.

Similarly, the Complaint at ¶ 21 alleges (emphasis added[2]),

There were numerous items on the title exceptions report for each of the properties that needed to be addressed by the Sellers in order for the Sellers to be able to deliver insurable title in accordance with the contracts of sale, *including without limitation*, open mortgages, New York City Environmental Control Board (ECB) monetary judgments, UCC filings, sidewalk violations, landmark violations, missing deeds and a notice of pendency.

[2] It is respectfully submitted that conditioning such a central piece of Plaintiff's action is improper and should be considered as proof of Plaintiff's opaque and pretextual reasons for its own failure to appear at the closing and tender full performance.

16

These allegations are completely irreconcilable with Plaintiff's other allegation that the reasons in the Closing Rejection Letters were what precluded the Closing. *See* Exhibit R, Closing Rejection Letters. However, even if considered, none of these allegations are incurable title defects to excuse Plaintiff from appearing at the closing.

Taken in order raised in the complaint, first, the title company clearly stated that a "title exception" is "an issue or proofs that are required as relate to a file that would like to see in order to have a level of comfort before we're willing to insure" such as "request for information" or "payoff letters that are required." *Miller Depo*. at generally page 16. Otherwise stated, proof that a certain matter is addressed. Here, Plaintiff lists open mortgages, but it is well settled that mortgages on the subject property are not incurable title defects. *R.C.P.S. Associates v. Karam Developers*, 258 A.D.2d 510, 511, 685 N.Y.S.2d 261, (2d Dep't 1999) ("Contrary to the appellant's contention, the execution by Karam of two mortgages on the subject property did not render it unable to perform the contract as a matter of law. It is well settled that '[i]n order to place the vendor of realty under a contract of sale in default for a claimed failure to provide clear title, the purchaser normally must first tender performance himself and demand good title'"). It is industry custom that mortgages are satisfied at closing from the proceeds of the sale, and as such are not incurable title defects.

Next, as for the "New York City Environmental Control Board monetary judgments, sidewalk violations, and landmark violations," the title company plainly stated that "we don't insure anything that is in the municipal section of our title report. Its provided for information only at the request of the person who requests it," *Miller Depo*. at generally page 9. As such, these are not defects to title nor do they prevent insurable or marketable title, which is what the Contract of Sale required The Contracts state that Defendants were to convey "insurable title" subject to

"permitted exceptions … provided same does not render title to the Premises unmarketable." Exhibit A, B, C, D, and E, Contracts at ¶¶ 9 and 13. *See Contract. Howard v. Berkman, Henoch, Peterson Peddy, P.C.*, 2004 N.Y. Slip Op. 51470, (NY Sup. 2004) ("It should be pointed out that the failure to have a certificate of occupancy is not an objection to title and does not affect the marketability or insurability of title. The issue of whether a premises can be legally occupied is not a title issue. Although this status is provided in most title reports, it is provided for "information purposes only.").

Finally, as for missing deeds and notices of pendency. As an initial matter, Plaintiff cannot simply conflate title of each property as though this was all one contract of sale. As mentioned before, there are no cross-default provisions and therefore if there was a violation, it cannot carry over. Secondly, neither missing deeds nor a notice of pendency is mentioned anywhere in any of the Closing Rejection Letters. Thirdly, besides the barren record as to a missing deed (an item that seems to be an easily curable oversight since a chain of title is publicly accessible), the only notice of pendency (and Plaintiff indeed pleads in the singular) is one which was discharged by a Bankruptcy Court Order several years ago,

> ORDERED, that notwithstanding the foregoing, from and after the closing on [1974 Morris Avenue], upon presentation of a copy of this Order, all filing and recording officers are hereby authorized and directed to file a copy hereof and remove or expunge of record any and all liens, claims, judgments, encumbrances or other interests that were of record immediately prior to the closing with respect to [1974 Morris Avenue], whether or not a discharge, satisfaction or release is provided by such parties ….

*In Re Quevent Enterprise* 14-10032-MG, December 21, 2014, (Bankr. S.D.N.Y)

As such, none of the alleged defects were incurable title defects and Plaintiff cannot justify its failure to appear at the Closing.

**C.      A Claim for the Return of the Downpayments or Other Damages is Unavailable**

Under New York law, as set forth by the New York Court of Appeals, contractual provisions limiting a party's liability, which "represent[] the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed," are generally enforceable. *See Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc*., 84 N.Y.2d 430, 618 N.Y.S.2d 882 (1994). A limitation of liability provision is unenforceable only where the misconduct for which the provision would limit liability "smack[s] of intentional wrongdoing." *Deutsche Lufthansa AG v. Boeing Co*., 2007 WL 403301, at * 3 (S.D.N.Y. Feb. 2, 2007). In addition, "New York courts 'set the bar quite high' in determining whether a party's conduct 'smacks of intentional wrongdoing.'" *Tradex Europe SPRL v. Conair Corp*., 2008 WL 1990464, at * 3 (S.D.N.Y May 7, 2008).

Furthermore, New York maintains the rule that the seller of real property may retain the full down payment in the event of the buyer's breach, regardless of whether that sum bears any relation to the seller's expected loss." *In re 1111 Myrtle Ave. Group LLC*, 575 B.R. at 588 (internal citations omitted).

Taken together, between the express contract limitations and New York's law, Plaintiff cannot seek damages – whether they be an attempt to recoup down payment or (as it may be pleaded) for actual damages. Accordingly, Plaintiff's alternative form of relief must be dismissed as unavailable.

## **CONCLUSION**

Wherefore, for the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Summary Judgment and award such other and further relief as the Court deems just proper and equitable.

Dated:   New York, New York
         July 9, 2019

                                **GOLDSTEIN HALL PLLC**


                                /S/ Brian J. Markowitz
                   By:    **BRIAN J. MARKOWITZ, ESQ.**
                          **DANIEL GOLDENBERG, ESQ.**
                          Attorneys for Defendants
                          *1988 MORRIS AVENUE LLC, 1974*
                          *MORRIS AVENUE LLC, 700 BECK*
                          *STREET LLC, 1143 FOREST AVENUE LLC*
                          *and 1821 TOPPING AVENUE LLC*
                          80 Broad Street, Suite 303
                          New York, New York 10004
                          Tel. (646) 768.4105
                          Fax. (646) 219.2450