UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                        Chapter 11

FMTB BH LLC,                                                  Case No. 18-42228-cec

                        Debtor.
-------------------------------------------------------------x

FMTB BH LLC,                                                  Adv. Pro. No. 18-01052-cec

                        Plaintiff,

    against

1988 MORRIS AVENUE LLC, 1974 MORRIS
AVENUE LLC, 700 BECK STREET LLC, 1143
 FOREST AVENUE LLC, and 1821 TOPPING
AVENUE LLC,

                        Defendants.
-------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**STAHL & ZELMANOVITZ**
*Special Counsel For*
*Plaintiff / Debtor FMTB BH LLC*
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422
jzelmanovitz@szlawllp.com
aneuhaus@szlawllp.com

Debtor-Plaintiff, FMTB BH LLC (the "plaintiff"), by its attorneys, Stahl & Zelmanovitz, respectfully submits this memorandum of law in opposition to the motion for summary judgment (the "Motion") filed by defendants1988 Morris Ave LLC, 1974 Morris  Ave LLC, 700 Beck Street LLC, 1143 Forest Ave LLC, and 1821 Topping Ave LLC (collectively, "defendants").

## PRELIMINARY STATEMENT

Defendants' motion for summary judgment should not have been filed by defendants in the first place. If at all, summary judgment should be granted to plaintiff. Having concluded discovery, the evidence obtained during discovery shows overwhelmingly that defendants anticipatorily repudiated their contractual obligations and were in breach with respect to *at least* three global issues. Those issues involve: (i) access to and inspection of the properties under contract, (ii) the absence of clearing of title and the insurance of the transaction by Riverside Abstract, plaintiff's title company, which did not send a closer to the December 18, 2017 because the transaction was not ready to close; and (iii) related due diligence held up by defendants when they retained new counsel. In sum, defendants held a sham closing on December 18, 2017, as to which the settled law of the State of New York does not require plaintiff to participate in or attend.

## STATEMENT OF FACT

The complaint asserts three causes of action: for (i) breach of contract, seeking the remedy of specific performance, given the unique real properties at issue; (ii) breach of contract, seeking damages;[1] and (iii) the assumption of the contracts pursuant to section 365 of the Bankruptcy Code.  The same facts support all causes of action.

As the Court is already well aware, plaintiff is a limited liability company, which contracted with each of the five defendant companies to purchase five separate pieces of real property. The properties are located at (a) 1821 Topping Avenue, Bronx New York, which is owned by 1821 Topping Ave LLC; (b) 1974 Morris Avenue, Bronx, New York, which is owned by 1974 Morris Ave LLC; (c) 1988 Morris Avenue, Bronx, New York, which is owned by 1988 Morris Ave LLC; (d) 770 Beck Street, Bronx, New York, which is owned by 700 Beck Street LLC; and (e) 1143 Forest Avenue, Bronx, New York, which is owned by 1143 Forest Ave LLC ((a) – (e), (together, the "Properties"). Each of the contracts of sale for the Properties are virtually identical. The contracts are dated June 19, 2017. The contracts are attached to defendants' moving papers as Exhibits A – E. All five properties are owned by Ihsan Saleem ("Saleem")and Titan Partners. *See* Depo. of Rafael Telahun at pp. 19 – 21; Depo of Jackson Strong at p. 29.

### The Defendants Breach The Access Provisions OF The Contracts

Access to the Properties before closing on the purchase of the Properties was important to plaintiff for multiple reasons: access was necessary to obtain financing in any form, whether by conventional financing or private "hard-money" loans; it was important to conduct due diligence with respect to those tenants which defendants were asking plaintiff to leave in place (an

---

[1] Among other things, plaintiff should be entitled to use and occupancy for the properties.

exception to the contract provision requiring that the Properties be delivered vacant); plaintiff had to ascertain whether there was damage to the Properties; and defendants had to complete and inspect the repairs done with respect to the two Morris Avenue properties.

Paragraph five of the Rider to each contract of sale provides, *inter alia*, that "appliances, plumbing, heating and electrical systems shall be in working order and roof should be free of leaks at closing…." The properties were also to be delivered vacant of tenants (para. 16(d) of the contracts). Paragraph 12 of the contracts provided that plaintiff had the right of access/inspection of the Properties with a request by "phone or otherwise."

On or about September 6, 2017, as a result of known post-contract damage to the property located at 1988 Morris Avenue,[2] the parties agreed to permit construction on the Properties and defendants again agreed to provide access to all of the Properties.[3] *See* Riegler Decl. at paras. 5 – 8. Accordingly, the parties entered into Addendums to the contracts dated October 4, 2017, which provided plaintiff with broad access to the Properties. *See* Exhibit I to Defendants' motion.

In furtherance of the Addendums' access provisions, the parties entered into a separate License Agreement, dated October 17, 2017 (the "License Agreement") (Exhibit H to defendants' motion), which, in-part, provided that plaintiff was permitted to conduct work and access both of the Morris properties. Defendants assert that the License Agreement covered the other three properties as well, but that alleged amendment is not memorialized in the License agreement and does not represent a fair reading of the License Agreement which only references the two Morris Avenue addresses.

---

[2] Jackosn Strong testified that water was coming through the roof. Depo. of Strong at p. 65. See also Depo. of Saleem at p. 49 ("there were leaks").
[3] Defendants' principal, Rafael Telahun, admitted at his deposition that all of the Properties were in the same general poor condition. *See* Ex. C to the Neuhaus Decl. at p.38.

It is thus quite clear, that the Contracts and the Addendums required access to all of the Properties which were to be delivered vacant of tenants (para. 16(d), of the contract).[4]

In November 2017, and leading up to the anticipated December 18, 2017 closing, defendants locked-out plaintiff and its workers from the Morris Avenue Properties. The repairs had not been completed and indeed, Mr. Strong, defendants' management agent (Depo. of Strong at p. 13, 77),[5] testified that the roof was still leaking. Strong Depo at p. 77. Defendants thus, anticipatorily breached the Contracts, the Addendums, and the License Agreement with respect to providing plaintiffs with access, which was denied by the November lock-out from the Morris Avenue Properties (*See* Riegler Decl. at para. 9; Mikhli Decl. at para. 3). Additionally, plaintiff's access to the Properties was again denied by defendants' attorney, Mr. Brian Hsu, in his emphatic email dated December 11, 2017, which stated that he "was not *authorized* [to permit access] until *we see real movement from your side to get to a closing date*." (emphasis added). *See* Defendants' Exhibit M. The evidence shows that despite Mr. Hsu's claim that access on short notice was unreasonable, this access had been requested two days prior, on December 9, 2017, by Joseph Riegler (plaintiff's contact) through Mr. Jackson Strong (defendants' contact). Riegler Decl. at para. 13 – 16 and Exhibit B thereto; Depo of Jackson Strong pp. 52 – 53, 65 (Strong is responsible for access); Depo. of Saleem at p. 52, 59. No access was ever permitted until January 22, 2019, long after the alleged closing date of December 18, 2017, through a demand for inspection made by plaintiff in the ordinary course of the present litigation. *See* Riegler Decl at 22, Neuhaus Decl. at para. 9, Exhibit H thereto.

---

[4] Defendants cannot dispute that they were incapable of delivering vacant Properties on December 18, 2017. The Beck Street, Forest Avenue and Topping Avenue Properties all had tenants on December 18, 2017, whom remained in possession. *See* Depo of Strong at pp. 36 – 38. Indeed, defendants had no plan to have these tenants leave. *See id.*

[5] Defendants' prior counsel, Mr. Malik Pearson, testified at his deposition that he believed that Mr. Strong was a member of one of the defendant entities. *See* Pearson Depo. at 14 lines 7-8.

This is just one reason why plaintiff was excused from appearing at a closing on December 18, 2017.

**Title Issues And Defendants' Anticipatory Repudiation And Breach**

Additionally, plaintiff's attorney ordered an examination of title in respect of the Properties as is customary and as is provided in paragraph 21 of the contracts of sale. Since at least November 14, 2017, plaintiff alerted defendants to the multiple specific title issues affecting each of the Properties, which had to be cleared pursuant to the Riders to the contracts in order to obtain approval from plaintiff's title company, Riverside Abstract (pursuant to para. 12 of the contract which requires insurable title by plaintiff's title company). *See* Decl. of Riegler at para. 19; Decl. of Mikhli at para. 4, Exhibit B; See Depo of Pearson at p. 13 lines 4 - 5. As noted by this Court in its ruling denying defendants' motion to dismiss, pursuant to paragraphs two and seven of the Riders, defendants were contractually obligated to fully clear title *prior* to closing. *See* Exhibit I to the Neuhaus Decl. (the transcript of the proceedings before this Court on July 24, 2018, at page 36:

> [T]he rider to the contract, which expressly provides that the terms of the rider shall govern and be binding in the event of any inconsistency or conflict of the contract does not reference paragraph 20 or contain a similar provision. Rather, paragraph 7 of the rider provides that upon being informed of title objections, the Defendants were required to remedy those issues by closing or were entitled to reasonable adjournment of the closing if needed. If the sellers chose not to cure the defects, the sellers have the right to cancel the contract and return the deposits. This appears to be inconsistent with paragraph 20, relied upon by the Defendants. And therefore it appears that paragraph 7 of the rider would govern such that the sellers were obligated to cure title defects prior to the closing.

The evidence also shows that during the period November 2017 through the beginning of December 2017, Mr. Malik Pearson, defendants' prior counsel, was hard to reach and ultimately

withdrew from his representation of defendants. *See* Mikhli Decl. at para. 3; Exhibit 1 page 6 -8

to the Pearson Depo (authentication at pages 26 – 28 of the Depo). It was not until Riegler's

prodding of defendants, to prepare for the closing (along with prodding by plaintiff's counsel),

that Mr. Brian Hsu, defendants' new counsel, appeared for defendants on or about December 6,

2017. *See* Riegler Decl. at para. 9- 12, 20. Weisel Decl. at paras. 2 – 3, Mikhli Decl. at 3; Depo

of Hsu at pp. 9 - 19. Until that time, no one on defendants' side was actually participating in the

preparation for a December 18, 2017 closing with plaintiff or Riverside Abstract. *Id.*

Importantly, the evidence shows that it was not until Thursday, 11:56 a.m., on December

14, 2018, that defendants' counsel first reached out to Riverside Abstract to begin to work on

clearing title issues for a closing defendants had scheduled for December 18, 2017, *the following

Monday at 10:00 a.m. See* Defendants' Exhibit T.

Even more startling is the fact that Mr. Hsu did not even copy plaintiff's counsel on his

communication to Riverside Abstract; thus, plaintiff was not even aware that defendants had

begun to take *any* substantive steps *whatsoever* to clear title. *Id. See also* Decl. of Mikhli at para.

4; Decl. Weisel at paras. 6 - 12. Plaintiff was only aware of defendants' demand that Riverside

Abstract produce a closer via a communication from the title company, which did not forward

defendants' email of December 14, 2017, to plaintiff. For all intents and purposes, this appeared

very much like preparation for a sham closing. *Id.* Indeed, if Riverside Abstract was satisfied and

defendants had remedied existing deficiencies, plaintiff *was* ready to close and specifically

requested that the title company order a bill for such a closing. *See* Weisel Decl. at para. 8,

Exhibit A; Miller Depo. at pp. 64-65. Indeed, as Ms. Karla Miller, General Counsel of Riverside

Abstract testified at Riverside Abstract's deposition, Riverside Abstract apparently did not

consider the Thursday mid-day email from defendants' counsel and resulting actions by the

parties to constitute adequate preparation for the following Monday morning closing. Ms. Miller testified that Riverside Abstracts' documentation reflected that long after December 18, 2017, both parties were still working to clear title to the Properties.[6] *See* Exhibit A to Neuhaus Decl. (Depo of Karla Miller, Esq. p. 23 "(I don't believe we had everything at that point, there was still a punch list."); p. 25 ("As of December 18, we did not have everything."); p. 39 ("My understanding is not everything was cleared up by December 18."); and pp. 52, 66 (same). Some of the items that had to be resolved were not actually available on the law date. *see* id. at pp. 48 – 49, 87 - 89. *See generally* 24, 26 – 17, and could have taken a long time to remedy. *Id.* at pp. 48 – 49. *See also* Depo. of Saleem at p. 67. A review of the deficiencies on each of the Properties, and the correspondence leading up to the law date, show that as far as plaintiff was aware, since November 14, 2017, defendants had simply abdicated their obligations to cure title (another anticipatory breach) and only pursued the December 18, 2017 closing as a legal strategy to seize the deposits or extract a larger purchase price. *See* Decl. of Mikhli. at paras. 4, 6; *See generally* Decl. of Weisel. Mr. Hsu concedes that he received no affirmative response that Riverside Abstract was ready to proceed with a closing on December 18, 2017. *See* Hsu Depo . at pp. 12 - 14.

Finally, with respect to the Beck Avenue property, there was a question as to a material representation made by defendants as to the status of the tenancy of a commercial tenant that

---

[6] The Court can take judicial notice of the fact that plaintiff's principals and counsel, and Ms. Leah Newman, Riverside Abstract's employee on the file, are Orthodox Jews, who observe the Sabbath. On the Friday before the purported closing, December 15, 2017, Sabbath began at approximately 4:20 p.m. Thus, Friday the 15th was a very short work day, leaving little time to adequately take care of these issues before the next business day, December 18, 2017. See generally, the Declaration of Abraham Weisel. *See also* Depo of Miller at p. 76 ("I can tell you that on Friday at 1:23, typically, she's not there because our office -- typically, most coordinators are gone as of 1:00 on a Friday. . . . As a matter of course, Fridays are early for us in the wintertime because of the time of Sabbath starting, and I don't believe that there is the general expectation for all employees to be checking their phones on a Friday afternoon."). *Cf.* Exhibit 11 to the Miller Depo. (Hsu email to Leah Newman dated Friday, December 15, 2017 at 4:21 p.m. "Is there anything outstanding with you?").

defendants refused to clear-up. *See* Decl. of Riegler at paras. 17 - 18, Decl of Mikhli at para. 5, Decl. of Weisel at paras. 3, 5. Plaintiff had been provided a lease for a commercial tenant at the Beck Avenue property, which defendants were looking to leave in place because of its desirable rent revenue (an exception to the contract requiring delivery of a vacant property). Plaintiff even provided a rent roll for the property, including a reference to this commercial tenant and its rent. *See* Exhibit D to the Riegler Decl. When counsel for plaintiff conducted due diligence regarding this lease and asked for a subordination, non-disturbance, and attornment agreement (SNDA), Malik Person did not provide one. *See* Decl. of Riegler at 18, Decl of Mikhli at para. 5; Pearson Depo. pp. 29 – 30; Exhibit 1 page 5 to the Pearson Depo. (SNDA requested on November 14, 2017); Depo. of Strong at p. 78. Indeed, plaintiff gained an understanding from Mr. Pearson, defendants' attorney, that the lease was not bonafide. *See Id.* Mr. Hsu also refused to permit due diligence with respect to the lease. *See Id.* Hsu Depo. pp. 41 – 42. Finally, Mr. Telahun, defendants' principal admitted at his deposition that this commercial tenant, in fact, *never took possession of the premises. See generally* Neuhaus Decl. at Exhibit C at pp. 95 – 103; Hsu Depo. pp. 41 – 42; Strong Depo. at p. 71; Saleem Depo. at 57. At Mr. Hsu's deposition, it became clear that even Mr. Hsu knew on December 11, 2017, that the tenant was not in possession but failed to convey this information to plaintiff's counsel. It is fair to say that plaintiff's pursuit of answers with respect to this valuable lease prior to a closing was more than reasonable, and defendants' conduct is not excusable.

Subsequent to December 18, 2017 the parties continued to discuss the open issues, including the exceptions to title. *See* Decl of Mikhli at para. 4, Decl. of Weisel at paras. 14 - 17; *See generally* Depo. of Karla Miller; Hsu Depo at p. 14 – 15, 33 - 34. Defendants were still trying to close in the near term. *See, e.g.*, Exhibit 16 to the Telahun Depo. (email dated

December 20, 2017 from Rafael Telahun). No resolution, however, was reached, leaving plaintiff no choice but to commence this action.

### Plaintiff's Rejection Letters

While defendants assert that plaintiff's letters rejecting defendants' time of the essence closing demands attached to defendants' motion papers as Exhibit V, are insufficient, they generally cover all of the issues and all of the Properties mentioned in the complaint and this motion. Additionally, the letter with respect to 1821 Topping Avenue, dated December 15, 2017 (defendants' motion Exhibit V) is misquoted by defendants in their statement of undisputed facts and in fact mentions the existence of a lis pendens.

### Plaintiff Was And Remains Ready And Willing To Close

As set forth in the Leifer Declaration, it was plaintiff's plan to first attempt to obtain conventional financing and, if that failed, to obtain a hard money loan for purposes of the acquisition. If such loans would not be available, it was understood that Mr. Joel Leifer, a former member of plaintiff and an investor associated with plaintiff, would fund the deal himself. Joel Leifer had at least $3,800,328.23 in ready funds available as of December 18, 2017.

# ARGUMENT

## I.

## STANDARD ON THE MOTION

Defendants' memorandum of law is entirely bereft of any treatment of the applicable facts and the legal standard applicable to this motion; and for good reason. As this Court advised at the last status conference, this is the type of case not amenable to summary judgment. Indeed, summary judgment should be granted only where "there is no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, "[t]he evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Wright v. Goord*, 554 F.3d 255, 266, 2009 U.S. App. LEXIS 1951, at *26 (2d Cir. 2009). *See also Ferrari v. County of Suffolk,* 845 F.3d 46, 56, 2016 U.S. App. LEXIS 23280, at *19 (2d Cir. 2016) ("resolving all ambiguities and draws all reasonable inferences against the moving party). Indeed, resolving all ambiguities and drawing all reasonable inferences from the evidence recited in the above fact section, against defendants, the moving parties, the Court should readily conclude that defendants breached their contractual obligations and then set up a sham closing for December 18, 2017,

## II.

## BECAUSE DEFENDANTS BREACHED THEIR CONTRATUAL OBLIGATIONS AND SCHEDULED A SHAM CLOSING WHEN THEY WERE NOT READY, WILLING, AND ABLE TO CLOSE, PLAINTIFF WAS EXCUSED FROM ATTENDING ON DECEMBER 18, 2017

The facts set forth above show that as of the December 18, 2017 law date, defendants  (i) were themselves in breach, and (ii) were not ready, willing and able to proceed to a closing for the sale of the Properties. As set forth above in greater detail, this was based on defendants' failure to: (i) provide contractually mandated access and inspection to the Properties, (ii)

10

properly engage in the clearing of title prior to the law date, and (iii) not to intentionally prevent investigation of issues such as the fictitious Beck property lease, which was stymied with the help of defendants' (at the time) newly retained counsel.

"A seller of real property moving for summary judgment on its counterclaim seeking a declaration that the buyer is in default under the contract of sale and that the seller is entitled to retain the down payment as liquidated damages also must make a prima facie showing that the seller was ready, willing, and able to perform on the law day. *Jian Yun Guo v. Azzab*, 162 A.D.3d 754, 754-755, 80 N.Y.S.3d 66, 68 (2d Dep't 2018). "An anticipatory breach by the party from whom specific performance is sought excuses the party seeking specific performance from tendering performance. . ." *Id.*;[7] *Zeitoune v. Cohen*, 66 A.D.3d 889, 891, 887 N.Y.S.2d 253, 255 (2d Dep't 2009) (same); *Kopp v. Boyango*, 67 A.D.3d 646, 650, 889 N.Y.S.2d 200, 204 (2d Dep't 2009) (same). *Eivers v. Dreamworks Constr., Inc.*, 48 A.D.3d 625, 625-626, 852 N.Y.S.2d 362, 363 (2d dep't 2008) ("[Buyer] raised a triable issue of fact as to whether the seller anticipatorily breached the contract by refusing to construct the home in accordance with the contract specifications and demanding payment for an amount substantially above the contract price, thus excusing the tender of their performance."). "Defendants [] attempt to take advantage

---

[7] Defendants apparently misunderstand the law. *Goetz v. Trinidad*, 91 N.Y.S.3d 513, 514, 168 A.D.3d 688 (2d Dep't 2019), cited by defendants, does not disagree with this proposition; it merely sets forth the prima facie case required by the movant. *Goetz* still agrees that in opposition to the prima facie case"[a]n anticipatory breach by the party from whom specific performance is sought excuses the party seeking specific performance from tendering performance" as explained in detail in *Jian Yun Guo*. Indeed, the *Goetz* decision cites and directly relies on *Jian Yun Guo*! The same faulty analysis applies to each and every case cited by defendants on pages 3 – 4 of their memorandum of law. This is also consistent with defendants' other faulty analysis that only one exception exists, "only recognized exception," p. 4. At least two exceptions exist: (i) the purchaser is not required to tender performance and attend a closing if the seller is unable to perform on the law day (*533 Park Ave. Realty, LLC v. Park Ave. Bldg. & Roofing Supplies, LLC*, 156 A.D.3d 744, 747, 68 N.Y.S.3d 110, 114 (2d Dep't 2017)), and (ii) an anticipatory breach by the party from whom specific performance is sought excuses the party seeking specific performance from tendering performance (*Jian Yun Guo*)).

of their own breach will not be condoned by this Court." *Gerschel v. Christensen*, 128 A.D.3d 455, 456, 9 N.Y.S.3d 216, 217 (1st Dep't 2015).

A purchaser is not required to tender performance and attend a closing if the seller is unable to perform on the law day. Performance and tender is excused because of the old adage that "[t]he law requires no one to do a vain thing." *Strasbourger v. Leerburger*, 233 N.Y. 55, 60, 134 N.E. 834, 836 (1922). Thus, the New York courts have uniformly held that "the purchaser is not required to tender performance and attend a closing if the seller is unable to perform on the law day." *533 Park Ave. Realty, LLC v. Park Ave. Bldg. & Roofing Supplies, LLC*, 156 A.D.3d 744, 747, 68 N.Y.S.3d 110, 114 (2d Dep't 2017). *Yu Ling Hu v. Zapas*, 108 A.D.3d 621, 622, 969 N.Y.S.2d 491 (2d Dep't 2013) ("the plaintiffs were not required to tender performance or attend the closing on November 13, 2007, in response to Zapas's letter purporting to make "time of the essence," since Zapas was unable to perform on the law day."). *Kopp v. Boyango*, 67 A.D.3d 646, 650, 889 N.Y.S.2d 200, 204 (2d Dep't 2009) (same).

Additionally, while defendants are correct that in instances where the defects in title are the only issue (here there are other issues as well) and are curable (here they are not), in order to place a vendor of realty under a contract of sale in default for a claimed failure to provide clear title, the purchaser normally must first tender performance himself [or herself] and demand  good title, there are apt exceptions. First, the Court already ruled that the title defects were not curable and needed to be resolved prior to closing. *See* Exhibit I to the Neuhaus Decl. (the transcript of the proceedings before this Court on July 24, 2018, at page 36 ("the rider to the contract, which expressly provides that the terms of the rider shall govern and be binding in the event of any inconsistency or conflict of the contract does not reference paragraph 20 or contain a similar provision. Rather, paragraph 7 of the rider provides that upon being informed of title objections,

12

the Defendants were required to remedy those issues by closing or were entitled to reasonable adjournment of the closing if needed. If the sellers chose not to cure the defects, the sellers have the right to cancel the contract and return the deposits. This appears to be inconsistent with paragraph 20, relied upon by the Defendants. And therefore it appears that paragraph 7 of the rider would govern such that the sellers were obligated to cure title defects prior to the closing.).

Second, as explained above, meaningless acts -- the appearance by plaintiff at a sham closing -- are not required. In a case similar to the present case, where defendants made little to no effort to resolve any of the three issues prior to the law date, "[w]hen the vendor is given notice of the defect prior to the scheduled closing date and does nothing to correct it until after the closing date, the purchaser need not tender performance as such tender would be meaningless." *Klaiber, LLC v. Coon*, 48 A.D.3d 856, 857, 851 N.Y.S.2d 667, 668, (3rd Dep't 2008); *Kopp v. Boyango*, 67 A.D.3d 646, 650, 889 N.Y.S.2d 200, 204 (2d Dep't 2009) (same).

Defendants cannot even dispute that they were incapable of delivering vacant Properties on December 18, 2017: The Beck Street, Forest Avenue and Topping Avenue Properties all had tenants on December 18, 2017, whom remained in possession in violation of the terms of the contracts of sale. *See* Depo of Strong at pp. 36 – 38. And, defendants had no plan to have these tenants leave. *See id.*

In sum, defendants held a sham closing on December 18, 2017, which, according to the settled law of the State of New York, plaintiff was not required to participate in or attend.

### III.

### <u>PLAINTIFF'S REJECTION LETTERS</u>

The defendants argue that somehow plaintiff's rejection letters were improper based on the "mend the hold" doctrine espoused in *Rode & Brand v. Kamm Games*, 181 F.2d 584, 587 (2d Cir. 1950), that case involved the sale of baseball games and a belated objection on "another and a different consideration." Here, however, the letters generally cover all of the same issues and all of the Properties mentioned in the complaint and this motion. Additionally, the letter with respect to 1821 Topping Avenue is misquoted by defendants in their statement of undisputed facts and in fact mentions the existence of a lis pendens. Defendants have not cited a single case which supports the notion that a party is restricted to the contents of the rejection letter. Indeed, nowhere does the law require a formal rejection letter (especially where the seller breaches first and was generally incapable of performance  and the parties were generally communicating these demands and objections). As explained in *Primetime 24 Joint Venture v. DirecTV, Inc.*, 2000 U.S. Dist. LEXIS 5022, *34, 2000 WL 426396 (S.D.N.Y., April 20, 2000), the "mend the hold" doctrine is probably not good law in New York, and in any event, would apply only if a party either relied on the reasons for non-performance originally given, or could have cured its performance had the true grounds for rejection been asserted earlier. Here, nether exception is applicable because there was no way defendants could have remedied their extensive breaches prior to and on the law date. Simply put, this argument has no merit and, in any event, the letters plaintiff provided to defendants substantially, if not fully, covered the matters presented on this motion for summary judgment.

IV.

**PLAINTIFF WAS AND REMAINS READY AND WILLING TO CLOSE**

As set forth in the Leifer Declaration, it was plaintiff's plan to first attempt to obtain conventional lending, and if that failed, to obtain a hard money loan. If such loans were not available, it was understood that Mr. Joel Leifer, a former member of plaintiff and an investor associated with plaintiff, would fund the deal himself. Joel Leifer had at least $3,800,328.23 in ready funds available as of December 18, 2017.

Thus, plaintiff has demonstrated that it was ready, willing, and able to close on the law date had the defendants set up a proper closing.

V.

**THE DAMAGES PLAINTIFF SEEKS ARE AVAILABLE**

Plaintiff's section C is simply not understandable. Plaintiff is entitled to seek any damages in law or equity because that is the law with respect to any breach of contract with respect to real property. Moreover, paragraph 23(b) of each of the contracts provides: "If seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity." Indeed, only Sellers' rights were limited pursuant to paragraph 23(a) to the receipt of the downpayment. But we note that the facts of this case clearly smack of defendants' wrongdoing. *See, e.g., Cipriano v. Glen Cove Lodge #1458, B.P.O.E.*, 1 N.Y.3d 53, 63, 769 N.Y.S.2d 168 (2003) ("Where a seller draws a prospective buyer into a transaction when it cannot possibly convey marketable title and then itself stymies the efforts of the buyer to remove the encumbrance, the seller may not rely on the language of the rider to keep the buyer's down payment."), and the forfeiture of a downpayment in excess of 10% of the contract price is not

15

permitted without a showing of damages. *See generally Pizzurro v. Guarino*, 147 A.D.3d 879, 880, 47 N.Y.S.3d 103 (2d Dep't 2017).

## VI.

## DEFECTS IN TITLE

"Generally, when a seller contracts to deliver title that a reputable insurance company would insure, the seller breaches the contract when the title company refuses to insure title unconditionally and without exception." Stenda Realty, LLC v. Kornman, 67 A.D.3d 996, 999, 889 N.Y.S.2d 639 (2d Dep't 2009) (citing Laba v. Carey, 29 N.Y.2d 302, 307, 327 N.Y.S.2d 613 (1971) ("Thus, it is said that the title company's approval must be unequivocal unless the exceptions are those contemplated by the contract.")).

Here, because of Rider provisions 2 and 7 to the contracts of sale, and the numerous items open on each of the Properties,[8] Riverside Abstract did not agree to insure the Properties as of December 18, 2017.

Thus, defendants breached their obligations under the contracts of sale.

---

[8] *See, e.g.*, Exhibit 16 to the Telahun Depo. (email dated December 20, 2017 from Rafael Telahun); Exhibit B to the Mikhli Decl.; Exhibits B - C to the Weisel Decl.); Depo of Karla Miller, Esq. p. 23 "(I don't believe we had everything at that point, there was still a punch list."); p. 25 ("As of December 18, we did not have everything."); p. 39 ("My understanding is not everything was cleared up by December 18."); and pp. 52, 66 (same). Some of the items that had to be resolved were not actually available on the law date. *see id.* at pp. 48 – 49, 87 - 89. *See generally* 24, 26 – 17, and could have taken a long time to remedy. *Id.* at pp. 48 – 49.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment should be

denied in all respects.


Dated:  New York, New York
        August 2, 2019

**STAHL & ZELMANOVITZ**
*Special Counsel For*
*Plaintiff / Debtor FMTB BH LLC*

By: _ /s/ Abraham Neuhaus_
     Joseph Zelmanovitz
     Abraham Neuhaus
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422
joezelmanovitz@aol.com
aneuhaus@szlawllp.com