UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
In re

                                  Case No. 18-42228-CEC

FMTB BH LLC,

                                  Chapter 11

                    Debtor.
----------------------------------------------------------------------X
FMTB BH LLC,

                    Plaintiff,

-against-                                Adv. Pro. No. 18-1052-CEC

1988 MORRIS AVENUE LLC,
1974 MORRIS AVENUE LLC,
700 BECK STREET LLC,
1143 FOREST AVENUE LLC,
1821 TOPPING AVENUE LLC,

                    Defendants.
----------------------------------------------------------------------X

<u>DECISION DENYING MOTION FOR SUMMARY JUDGMENT</u>

APPEARANCES:

Joseph Zelmanovitz, Esq.          Brian J. Markowitz, Esq.
Abraham Neuhaus, Esq.            Goldstein Hall PLLC
Stahl & Zelmanovitz               80 Broad Street
747 Third Avenue                   Suite 303
Suite 33B                         New York, NY 10004
New York, NY 10017             Counsel for the Defendants
Counsel for the Plaintiff

Fred B. Ringel, Esq.
Lawrence S. Hirsh, Esq.
Clement Yee, Esq.
Robinson, Brog, Leinwand,
   Greene, Genovese & Gluck P.C.
875 Third Ave Fl 9
New York, NY 10022
Counsel for the Plaintiff

                             CARLA E. CRAIG
                    Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of 1988 Morris Ave LLC, 1974 Morris Ave LLC, 700 Beck St LLC, 1143 Forest Ave LLC, and 1821 Topping Ave LLC (collectively, the "Defendants") seeking summary judgment (the "Summary Judgment Motion") dismissing this action commenced by FMTB BH LLC (the "Plaintiff") for specific performance in connection with five contracts of sale to purchase five parcels of real property.   For the following reasons, the Summary Judgment Motion is denied.

JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  A bankruptcy judge may hear a non-core proceeding that is related to a bankruptcy case.  28 U.S.C. § 157(c)(1).  This non-core proceeding is related to this bankruptcy case because the sale contracts are the only scheduled assets of the estate.  See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate.").  Absent consent of the parties to entry of a final order, the bankruptcy judge is directed to submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. 28 U.S.C. § 157(c)(1).  The parties have

1

consented to adjudication of this motion, and final adjudication of this adversary proceeding, by this Court. (ECF Nos. 45, 46).[1]

BACKGROUND

Unless otherwise noted, the following facts are undisputed, or are matters of which judicial notice may be taken.

On June 19, 2017, the Plaintiff entered into five separate contracts of sale, as follows: (1) to purchase 1988 Morris Avenue, Bronx, NY ("1998 Morris Ave.") from Defendant 1988 Morris Ave LLC (the "1988 Morris Avenue Contract"); (2) to purchase 1974 Morris Avenue, Bronx, NY ("1974 Morris Ave.") from 1974 Morris Ave LLC (the "1974 Morris Avenue Contract"); (3) to purchase 700 Beck Street, Bronx, NY ("700 Beck St.") from 700 Beck Street LLC (the "700 Beck Street Contract"); (4) to purchase 1143 Forest Avenue, Bronx, NY ("1143 Forest Ave.") from 1143 Forest Ave LLC (the "1143 Forest Avenue Contract"); and (5) to purchase 1821 Topping Avenue, Bronx, NY ("1821 Topping Ave.") from 1821 Topping Ave LLC (the "1821 Topping Avenue Contract," and, together with the 1988 Morris Avenue Contract, the 1974 Morris Avenue Contract, the 700 Beck Street Contract, the 1143 Forest Avenue Contract, and the 1821 Topping Avenue Contract, the "Contracts," and each, a "Contract"). (Defs.' Stmt. of Undisputed Facts ¶ 1, ECF No. 39-27; Markowitz Decl. Exs. A-E, ECF Nos. 39-2 - 39-6; Pl.'s Resp. ¶ 1, ECF No. 40-1.)

The Plaintiff made the following down payments pursuant to the Contracts: (1) $25,833.33 under the 1988 Morris Avenue Contract; (2) $25,833.33 under the 1974 Morris Avenue Contract; (3) $34,4444.44 under the 700 Beck Street Contract; (4) $34,444.44 under the

---

[1] Citations to "ECF No. []" are to documents filed in Adv. Pro. No. 18-01052-CEC, identified by docket entry number.  Citations to "Case No. 18-42228-CEC, ECF No. []" are to documents filed in the main bankruptcy case, In re FMTB BH LLC, identified by docket entry number.

1143 Forest Avenue Contract; and (5) $34,444.44 under the 1821 Topping Avenue Contract. (Defs.' Stmt. of Undisputed Facts ¶ 1, ECF No. 39-27; Pl.'s Resp. ¶ 1, ECF No. 40-1.)  The Contracts did not contain a mortgage contingency.  (Defs.' Stmt. of Undisputed Facts ¶ 2, ECF No. 39-27; Pl.'s Resp. ¶ 2, ECF No. 40-1.)  Each Contract provided that, in the event of a default by the Plaintiff, the remedy of each Defendant was limited to retaining the down payment made under that Contract. (Defs.' Stmt. of Undisputed Facts ¶ 3, ECF No. 39-27; Pl.'s Resp. ¶ 3, ECF No. 40-1.)  The Contracts do not contain a cross-default provision, and therefore, a default under one Contract is not default under the other Contracts.  (Defs.' Stmt. of Undisputed Facts ¶ 7, ECF No. 39-27; Pl.'s Resp. ¶ 7, ECF No. 40-1.)

On August 22, 2017, the Defendants' real estate counsel sent the Plaintiff's counsel a time of the essence letter for each Contract, scheduling closings for September 14, 2017. (Defs.' Stmt. of Undisputed Facts ¶ 9, ECF No. 39-27; Markowitz Decl. Ex. F, ECF No. 39-7; Pl.'s Resp. ¶ 9, ECF No. 40-1.)  Those closings did not occur, and on October 27, 2017, the Defendants' counsel sent a second set of time of the essence letters, scheduling closings for October 2, 2017.  (Defs.' Stmt. of Undisputed Facts ¶ 10, ECF No. 39-27; Markowitz Decl. Ex. G, ECF No. 39-8; Pl.'s Resp. ¶ 10, ECF No. 40-1.)  Those closings also did not occur.

On October 4, 2017, the Plaintiff and the Defendants executed an addendum to each Contract (collectively, the "Addenda"), which, among other things, authorized the down payments made under the Contracts to be released to the Defendants, provided for an additional deposit of $169,000 per Contract, and scheduled a third time of the essence closing date of December 18, 2017. (Defs.' Stmt. of Undisputed Facts ¶¶ 11, 12, ECF No. 39-27; Markowitz Decl. Ex. I, ECF No. 39-10; Pl.'s Resp. ¶¶ 11, 12, ECF No. 40-1.)

On October 17, 2017, 1988 Morris Ave LLC, 1974 Morris Ave. LLC, and the Plaintiff executed a license agreement (the "License Agreement"), authorizing the Plaintiff to access 1974 Morris Ave. and 1988 Morris Ave. to perform specified work at those properties.[2] (Defs.' Stmt. of Undisputed Facts ¶ 12, ECF No. 39-27; Markowitz Decl. Ex. H, ECF No. 39-9; Pl.'s Resp. ¶ 12, ECF No. 40-1.)

On October 19, 2017, the down payments were released to the Defendants in accordance with the Addenda, and the Plaintiff made the additional $169,000 deposit under each Contract. (Defs.' Stmt. of Undisputed Facts ¶ 13, ECF No. 39-27; Pl.'s Resp. ¶ 13, ECF No. 40-1.)

On the morning of December 18, 2017, the Plaintiff's counsel emailed letters dated December 15, 2017 to the Defendants' counsel rejecting the December 18, 2017 closing.  (Defs.' Stmt. of Undisputed Facts ¶ 27, ECF No. 39-27; Markowitz Decl. Ex. V, ECF No. 39-23; Pl.'s Resp. ¶ 27, ECF No. 40-1.)  The closings did not take place on December 18, 2017. (Defs.' Stmt. of Undisputed Facts ¶ 27, ECF No. 39-27; Pl.'s Resp. ¶ 27, ECF No. 40-1.)  The parties dispute why the closings did not occur, and that dispute lies at the heart of this Summary Judgment Motion.

On April 23, 2018, the Plaintiff filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and commenced this action for specific performance, or alternatively, for damages.  On August 14, 2019, the Defendants filed this motion for summary judgment (ECF No. 39), which the Plaintiff opposed.[3]

---

[2] The License Agreement mistakenly lists 1988 Morris Avenue LLC twice in the introductory paragraph, and does not list 1974 Morris Avenue LLC, but the agreement relates to access to 1998 Morris Ave. and 1974 Morris Ave. and is executed by both entities.
[3] The transcript of the hearing held on the Summary Judgment Motion on August 21, 2019 is cited to herein as "Tr."

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)), cert. denied, 540 U.S. 811 (2003). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted).

DISCUSSION

The Defendants argue that the Plaintiff's failure to tender performance on law day, December 18, 2017, is fatal to the Plaintiff's specific performance claim, and therefore, summary judgment must be entered in the Defendants' favor.  In response, the Plaintiff argues that New York law excuses a plaintiff from tendering performance when the defendant breaches the contract prior to closing, or anticipatorily breaches the contract.

Under New York law, "'[a] plaintiff seeking to maintain an action for specific performance or for damages for nonperformance of a contract must demonstrate that a tender of his or her own performance was made, unless tender was waived or the necessity for such a tender was obviated by acts of the other party amounting to an anticipatory breach of the contract

5

or establishing that such party would be unable to perform.'" Lower v. Vill. of Watkins Glen,

794 N.Y.S.2d 140,142 (N.Y. App. Div. 2005) (quoting Madison Invs. v Cohoes Assoc., 176

A.D.2d 1021, 1021-1022 (N.Y. App. Div. 1991)).  A seller's anticipatory breach of contract

relieves a purchaser of its obligation to tender performance, but does not "discharge [the

purchaser's] obligation to show that it was ready and able to perform its own contractual

undertakings on the closing date, in order to secure specific performance."  Huntington Mining

Holdings, Inc. v. Cottontail Plaza, Inc., 459 N.E.2d 492, 492 (N.Y. 1983). See also, e.g., 533

Park Ave. Realty, LLC v. Park Ave. Bldg. & Roofing Supplies, LLC, 68 N.Y.S.3d 110, 114

(N.Y. App. Div. 2017) ("An anticipatory breach of the contract excuses the purchaser from

tendering performance, but does not excuse the purchaser from the requirement that it be ready,

willing, and able to perform."); Zeitoune v. Cohen, 887 N.Y.S.2d 253, 255 (N.Y. App. Div.

2009) ("An anticipatory breach by the party from whom specific performance is sought excuses

the party seeking specific performance from tendering performance, but not from the

requirement that the party seeking specific performance establish that he or she was ready,

willing, and able to perform."); Fridman v. Kucher, 826 N.Y.S.2d 104, 105 (N.Y. App. Div.

2006) ("A purchaser who seeks specific performance of a contract for the sale of real property

must demonstrate that he or she was ready, willing, and able to perform the contract, regardless

of any anticipatory breach by a seller.").

New York law is clear that the Plaintiff was not required to tender performance under the

Contracts and appear on law day if the Defendants breached, or anticipatorily breached, the

Contracts.  The Plaintiff argues that the Defendants failed to provide access to the properties as

required by the Contracts, constituting a breach that excused the Plaintiff from tendering

performance on law day.   The Plaintiff argues that access was necessary for multiple reasons:

(1) to obtain financing from any conventional or hard money lender; (2) to conduct due diligence with respect to the leases that were to remain in place after the purchase and, conversely, to confirm that other units were vacant as required; (3) to inspect the premises for damage; and (4) to complete repairs to 1947 Morris Ave. and 1988 Morris Ave. under the License Agreement. (Pl.'s Mem. of Law. In Opp'n at 2-3, ECF. No. 40).  The Plaintiff further argues that the Defendants anticipatorily breached the Contracts by failing to satisfy the title issues raised by the Plaintiff's title company in advance of the closing, and therefore, appearing at the closing would have been futile.

The Defendants argue that the Plaintiff requested access to the properties on unreasonably short notice. (Defs.' Stmt. of Undisputed Facts ¶ 18; Markowitz Decl. Ex. O, ECF No. 39-16.)   The Defendants further argue that, to constitute an anticipatory breach, the title issues must have been incurable, and the issues raised by the Plaintiff's title company were not incurable.

The Plaintiff disputes that it requested access on unreasonably short notice, and argues that the Defendants prevented the Plaintiff from accessing the properties starting in November 2017, when it was denied access to 1974 Morris Ave. and 1988 Morris Ave. to complete work pursuant to the License Agreement. The Plaintiff alleges that access was not provided until January 22, 2019, after a demand for inspection during this litigation.  (Pl.'s Mem. of Law in Opp'n, at 4, ECF No. 40.)

The Contracts explicitly required the Defendants to allow the Plaintiff to access the properties, and contains conditions to closing that would necessitate the Plaintiff's access to verify that the conditions were satisfied.  Each contract contains the following provisions:

> 12.  Condition of Property:  . . . Purchaser and its authorized
> representatives shall have the right, as reasonable times and upon

reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

\*          \*          \*

16. Conditions to Closing.  This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

\*          \*          \*

(d) the delivery of the Premises and all buildings(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with the keys to the Premises.

(e) All plumbing (including water supply and septic systems, if any), hearing and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the buildings(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(Markowitz Decl. Exs. A-E, ¶¶ 12, 16, ECF Nos. 39-2 - 39-6.)

The riders to the Contracts each provide that the premises are being sold "AS IS . . . subject to reasonable use, wear and tear and natural deterioration between now and the closing date," but that "the appliances, plumbing, heating and electrical systems shall be in working order and roof should be free of leaks at closing."  (Markowitz Decl. Ex. A-E, Seller's Rider to Contract ¶ 5, ECF Nos. 39-2 - 39-6.)

In support of its argument that the Defendants refused access to the properties as required by the Contracts, the Plaintiff provided the Declaration of Joseph Riegler, a former member of the Plaintiff.[4]  Mr. Riegler explained that, after the Contracts were executed, 1988 Morris Ave. sustained significant damage to the roof, water and electrical damage, and mold.  (Riegler Decl.

---

[4] Mr. Riegler is identified on the Statement of Financial Affairs as a former member of the Plaintiff.  (Stmt. of Fin. Affairs ¶ 29, Case No. 18-42228-CEC, ECF No. 1.)

¶ 5, ECF No. 40-3.)  He further explained that, at the time the 1974 Morris Ave. Contract was executed, 1974 Morris Ave. was under construction to be converted from a two-family dwelling to a three-family dwelling, which the Plaintiff was going to complete.  (Riegler Decl. ¶¶ 6, 7 ECF No. 40-3.)  Mr. Riegler stated that, around November 29, 2017, after the License Agreement was executed, and after the Plaintiff hired a contractor to perform the work on those two properties, the locks to the buildings were changes, and he was unable to reach the Defendants' agent with whom he had been in contact, Mr. Jackson Strong.  (Riegler Decl. ¶ 9, ECF No. 40-3.)  The Court notes that the License Agreement specifically designates Mr. Strong as the agent of 1974 Morris Ave LLC and 1988 Morris Ave LLC, and requires the Plaintiff to notify Mr. Strong "the morning when Work on the Properties is to be conducted on a given day." (Markowitz Decl. Ex. H ¶ 7(b), ECF No. 39-9.)

Mr. Riegler stated that he attempted to contact Mr. Strong on November 30, 2017, and was told that contact should be directed to the Defendants' new attorney, for whom Mr. Strong would provide contact information. (Riegler Decl. ¶ 10, ECF No. 40-3; Riegler Decl. Ex. B., ECF No. 40-3.)   Mr. Riegler again contacted Mr. Strong on December 1, 2017 to request the new counsel's information, but was not provided with it until December 3, 2017.  (Riegler Decl. ¶¶ 11-12, ECF No. 40-3; Riegler Decl. Ex. B, ECF No. 40-3.)   Though Mr. Strong informed Mr. Riegler on December 3, 2019 that he is no longer authorized to act on behalf of the Defendants, Mr. Riegler stated the Defendants' new counsel was unresponsive, and Mr. Riegler again requested access from Mr. Strong on December 9, 2017 and December 10, 2017.  (Riegler Decl. ¶¶ 12-14, ECF No. 40-3.)

Exhibit B to Mr. Riegler's declaration is a text message conversation evidencing Mr. Riegler's requests access to "[Beck], [F]orest, and [T]oppings" on December 9, 2017, and access

to "[F]orest" and "[B]eck" on December 10, 2017.  (Riegler Decl. Ex. B, ECF No. 40-3.)

Though the texts do not specify the property addresses, it is sufficiently clear that they relate to

700 Beck St., 1143 Forest Ave., and 1821 Topping Ave.  The Defendants' new counsel officially

denied access on December 11, 2017, stating "I am not authorized at this time to provide that

access.  We need to see real movement from your side to get to a closing date."  (Markowitz

Decl. Ex. M, ECF No. 39-14.)  At the time the Defendants' counsel sent that email, though, the

time of the essence closing date was already scheduled, pursuant to the Addenda, for one week

later, on December 18, 2017.

       In addition to the failure to provide access as required under the Contracts, the Addenda,

and the License Agreement, the Plaintiff asserts that Defendant 700 Beck St LLC misrepresented

the existence of a commercial lease at 700 Beck St.  The parties do not dispute that the sale of

700 Beck St. included an existing commercial lease to a day care facility.  The Defendant 700

Beck St LLC provided a copy of the commercial lease to the Plaintiff. (Defs.' Stmt. of

Undisputed Facts ¶ 20, ECF No 39-27; Markowitz Decl. Ex. S, ECF No. 39-20.)   The Plaintiff

raised concerns about the validity of the commercial lease, and, therefore, the accuracy of the

rent roll for 700 Beck St.   (Defs.' Stmt. of Undisputed Facts ¶ 20, ECF No 39-27; Pl.'s Resp.

¶ 20, ECF No. 40-1.)  Mr. Riegler explained that the Plaintiff's title company requested a

subordination, non-disturbance, and attornment agreement with respect to the commercial lease,

which was not provided, "altert[ing the Plaintiff] to a potential problem."  (Riegler Decl. ¶¶ 17,

18, ECF No. 40-3.)  The Plaintiff asserts that, during discovery, the principal of 700 Beck St

LLC, Rafael Telahun, stated that the commercial tenant never took possession of the premises.

(Pl.'s Mem. of Law in Opp'n at 8, ECF No. 40; Riegler Decl. ¶ 18, ECF No. 40-3; Neuhaus

Decl. Ex. B, Telahun Dep. 95:17-18, ECF No. 42-3.)

The Plaintiff also argues that 700 Beck St., 1143 Forest Ave., and 1821 Topping Ave. were not vacant of residential tenants as required by the Contracts. (Pl.'s Mem. of Law in Opp'n at 13, ECF No. 40.) In support, the Plaintiff relies on the deposition of Mr. Strong, in which he stated that those properties were not vacant and free of tenancies as of December 18, 2017 as required by the Contracts, and that there were no plans to remove them. (Neuhaus Decl. Ex. C, Strong Dep. 36-38, ECF No. 42-4).

The Defendants argue that the only circumstance that excuses a plaintiff from tendering performance on law day is the presence of uncurable title defects, and that other actions or inactions by a defendant are insufficient to excuse the plaintiff from tendering performance on law day. In support, the Defendants cite Cohen v. Kranz, 189 N.E.2d 473 (N.Y. 1963), where the New York Court of Appeals stated "[w]hile a vendee can recover his money paid on the contract from a vendor who defaults on law day without a showing of tender or even of willingness and ability to perform where the vendor's title is incurably defective, a tender and demand are required to put the vendor in default where his title could be cleared without difficulty in a reasonable time." Cohen v. Kranz, 12 N.Y.2d 242, 246 (N.Y. 1963) (citation omitted). The Defendants also rely on Ilemar Corp. v Krochmal, 376 N.E.2d 917 (N.Y. 1978), arguing that there is a red-line rule that "[t]ender of performance by the purchaser is excused only if the title defect is not curable, for in such a case it would serve no purpose to require the purchaser to go through the futile motions of tendering performance." Ilemar Corp. v. Krochmal, 376 N.E.2d 917, 917 (N.Y. 1978).

However, the Defendants are misreading Cohen and Krochmal. The only issues raised by the buyers in those cases were title issues, and therefore the Court of Appeals necessarily only addressed whether a buyer may recover a deposit after failing to appear on law day if the title

issues were curable.  Nothing in <u>Cohen</u> or <u>Krochmal</u> suggests that an uncurable title issue is the only basis to excuse a buyer from tendering performance on law day prior to seeking specific performance.   Indeed, New York case law is replete with authority that tendering performance may be excused for other reasons.  <u>See, e.g.</u>, <u>Jian Yun Guo v. Azzab</u>, 80 N.Y.S.3d 66 (N.Y. App. Div. 2018) (excusing a buyer from tendering performance prior to seeking specific performance where the seller stated that she did not intend to attend the closing and wanted to cancel the contract);  <u>Klaiber, LLC v. Coon</u>, 851 N.Y.S.2d 667, 668 (N.Y. App. Div. 2008) (excusing a purchaser from tendering performance, even when a title defect is curable, "when the vendor is given notice of the defect prior to the scheduled closing date and does nothing to correct it until after the closing date"); <u>3M Holding Corp. v. Wagner</u>, 560 N.Y.S.2d 865 (N.Y. App. Div. 1990) (seller's improper cancellation of the contract excused the purchaser from tendering performance); <u>Huntington Mining Holdings, Inc. v. Cottontail Plaza, Inc.</u>, 465 N.Y.S.2d 40, 40 (N.Y. App. Div. 1983), <u>aff'd</u>, 459 N.E.2d 492 (N.Y. 1983) (same).

In this case, Mr. Riegler's declaration that the Plaintiff was locked out of 1988 Morris Ave. and 1974 Morris Ave. after the License Agreement was executed, and that access was denied to 700 Beck St., 1143 Forest Ave., and 1821 Topping Ave., together with the deposition testimony of Mr. Telahun that the commercial tenant never took possession, and Mr. Strong's deposition testimony that 700 Beck St., 1143 Forest Ave., and 1821 Topping Ave. were not vacant of residential tenants, raise genuine issues of material fact with respect to whether the Defendants breached the Contracts, thereby excusing the Plaintiff from tendering performance on December 18, 2017.  Given this determination, there is no need to address whether there also existed uncurable title issues on law day.

Because the Plaintiff raised a genuine issue of material fact with respect to the Defendants' breach of the Contracts, the Defendants' argument that summary judgment must be granted due to the Plaintiff's failure to tender performance on law day must be rejected. If it is ultimately found that the Defendants did, in fact, anticipatorily or actually breach the Contracts, the Plaintiff's burden on the specific performance claim would be to establish that it was ready, willing, and able to close. In that regard, the Plaintiff submitted the declaration of Joel Leifer, stating that, if the Plaintiff was unable to obtain financing through a conventional or hard money lender, he was willing to fund the purchases of the properties under the Contracts.[5] (Leifer Decl. ¶ 2, ECF No. 40-2.) Leifer's declaration is supported by a bank statement reflecting that he had sufficient funds available on December 18, 2017 to purchase the properties under the Contracts. (Leifer Decl. Ex. A, ECF No. 40-2.) Although at the hearing on this motion, the Defendants state that Mr. Leifer testified at his deposition that he was never asked for the funds (Tr. at 19-20), the relevance of this is questionable, given that Mr. Leifer was a member of the Debtor. [6] At a minimum, there is a genuine issue of material fact as to the Plaintiff's financial ability to close, which precludes summary judgment.

The Defendants argue that the Plaintiff's failure to attend the closings is prima facie evidence that the Plaintiffs were not ready, willing, and able to close. In support, the Defendants cite two recent New York Appellate Division cases, Goetz v. Trinidad, 91 N.Y.S.3d 513 (N.Y. App. Div. 2019) and Second Ave. Grp. LLC v. Capdell, LLC, 168 A.D.3d 415, 88

---

[5] Mr. Leifer is identified in the Plaintiff's bankruptcy schedules and Statement of Financial Affairs. Schedule F identifies Mr. Leifer as an unsecured creditor; Schedule H identifies him as a co-obligor, and the Statement of Financial Affairs identifies him as a former member of the Plaintiff and a source of payment for the Plaintiff's bankruptcy counsel's pre-petition fee. (Schedules F, H, Stmt. of Fin. Affairs ¶ 29, Case No. 18-42228-CEC, ECF No. 1.)
[6] The deposition transcript was not provided to the Court.

N.Y.S.3d 878 (N.Y. App. Div. 2019).  However, those cases are readily distinguishable from this case.

In <u>Goetz</u>, sellers sought a determination that the buyer was in default and that they were therefore permitted to retain the buyer's deposit.  <u>Goetz v. Trinidad</u>, 91 N.Y.S.3d 513, 514 (N.Y. App. Div. 2019).   The court stated that "[a] seller of real property seeking a determination that the buyer is in default under the contract of sale and that the seller is entitled to retain the down payment as liquidated damages must make a prima facie showing that the seller was ready, willing, and able to perform on the law day. <u>Id.</u> (citations omitted). The court further stated that, "'[i]n this regard, a seller may demonstrate prima facie entitlement to judgment as a matter of law by presenting evidence that a buyer failed to appear at a time-of-the-essence closing.'" <u>Id.</u> (quoting <u>Jian Yun Guo .v Azzab</u>, 162 A.D.3d 754, 754 (N.Y. App. Div. 2018)).  The <u>Goetz</u> court ultimately found that the sellers established that they were ready, willing, and able to close, but denied summary judgment in the sellers' favor because the purchaser raised a genuine issue of material fact with respect to whether his failure to close was "willful" as required by that specific contract.  <u>Id.</u> at 515.  <u>Goetz</u> did not address any exception to the requirement of tendering performance, which the Plaintiff in this case has raised, and therefore <u>Goetz</u> is inapplicable.

<u>Second Ave. Grp.</u>, the second case relied upon by the Defendant for the proposition that a seller demonstrates prima facie entitlement to judgment when the buyer fails to appear at closing, it similarly distinguishable.  In that case, a purchaser sought the return of its down payment on the basis of the seller's breach based upon title issues.  <u>Second Ave. Grp. v. Capdell, LLC</u>, 168 A.D.3d 415, 415 (N.Y. App. Div. 2019).  However, the court determined that the seller was not in breach under that particular contract, and that the buyer lacked a lawful excuse for failing to appear at the closing.  <u>Id.</u> at 416.   Unlike <u>Second Ave. Grp.</u>, however, in this case, the Plaintiff

raised a genuine issue of material fact with respect to whether the Defendant breached the

Contracts, and therefore, raised a genuine issue of fact with respect to its obligation to tender

performance.  As such, the failure of the Plaintiff to appear at the closing is not dispositive in this

case, as it was in <u>Second Ave. Grp</u>.

<u>CONCLUSION</u>

Because the Defendant has not established that the Plaintiff was not ready, willing, and

able to close under the Contracts, and because the Plaintiff raised a genuine issue of material fact

with respect to the Defendants' breach under the Contracts, the Defendants' summary judgment

motion is denied. A separate order will issue.



**Dated: Brooklyn, New York**
**January 13, 2020**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**